**STATE of Iowa, Plaintiff-Appellee,**

v.

**Clark T. PECK, Defendant-Appellant.**

**No. 67668.**

Court of Appeals of Iowa.

Nov. 29, 1982.

David D. Dixon of Heslinga & Heslinga, Oskaloosa, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and John P. Messina, Asst. Atty. Gen., for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON, SNELL, and JOHNSON, JJ.

DONIELSON, Judge.

Defendant appeals from his conviction of theft in the second degree in violation of Iowa Code § 714.1(4) (1981) and going armed with a dangerous weapon in violation of Iowa Code § 724.4 (1981). On appeal defendant asserts (1) that evidence seized as a result of the search of his person should have been suppressed since the officers who searched defendant's person had no articulable facts upon which to justify an investigative search, nor a frisk for their protection, and there was not probable cause for arresting defendant, so the search could not be justified as an incident to arrest; (2) the court erred by admitting into evidence over defendant's chain of custody objection items which were taken from the trunk of the stolen car and stored in an unlocked evidence closet, without being sealed or marked for identification, particularly when the closet was accessible to persons coming to visit prisoners; and (3) there was not substantial evidence to justify submission to the jury of the charge of theft by exercising control over stolen property.

Our scope of review is for errors at law pursuant to Iowa Rule of Appellate Procedure 4. However, the portions of the record which bear upon the constitutional question of a valid search and seizure are reviewed de novo. *State v. Koop,* 314 N.W.2d 384, 387 (Iowa 1982).

I.

On June 19, 1981, an automobile was reported stolen in Grinnell, Iowa. Later that day, the owner saw the car parked in a gravel parking area next to a park. The owner notified a deputy sheriff and returned with him to the car. Two men were sitting in the park each about 100 feet from the car; they were not together. When the officer's cruiser pulled up to the stolen car, one of the men, defendant, left the area. The officer questioned the other man who said that he had not seen anyone near the stolen car.

The deputy then radioed another officer to search for defendant. He was located a short distance from the park and was taken back to the stolen car in the second officer's patrol car. Upon their return, the second officer told the first that defendant had a history of auto theft. The arresting officer testified at trial that at this point the officers found the keys to the car pushed down

into the ground in the area where defendant had been sitting. We note, however, that the officers' testimony at the hearing on the motion to suppress suggested that the keys were not found until after the search was conducted.

The officers then informed defendant that he would be searched, at which point he produced a switchblade knife from his pocket and handed it to the officers. The officers then made an inventory search of the stolen car and found, among other things, burglary tools including a crow bar and bolt cutters. Defendant was taken to the police station for questioning, and was subsequently charged.

At trial, defendant objected on chain of custody grounds to admission of the switchblade knife, the vehicle keys, and various items taken from the trunk of the car. The court initially sustained the objection, but later admitted the items. The items taken from the trunk of the car were not allowed to go to the jury room, however, because the court had directed a verdict on a charge of possession of burglary tools, the only charge to which the items from the trunk were relevant. The jury returned a guilty verdict on both charges and defendant instituted this appeal.

## II.

Defendant's first contention is that the court erred in overruling his motion to suppress evidence, consisting of the switchblade knife, which he claims was obtained as a result of an illegal, warrantless search. We find this argument without merit.

■ The police here were investigating a stolen vehicle incident. The car was found in the parking lot of a public park. When the owner and police officer approached there were two persons sitting on some playground equipment near the car. When the officer approached, the defendant immediately left the scene. The Iowa Supreme Court has recognized that a person might reasonably believe that one seen fleeing to avoid apprehension "might be more apt to be guilty than one who does not." *State v. Barr,* 259 N.W.2d 841, 842 (Iowa

1977). Similarly, it is reasonable for an officer to be suspicious of one who removes himself from the area where a crime is being investigated immediately upon the officer's arrival. Indeed the United States Supreme Court has noted that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." *Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 937 (1968).

In *State v. Donnell,* 239 N.W.2d 575 (Iowa 1976), the court recognized that:

In [*State v. Cooley,* 229 N.W.2d 755, 760 (Iowa 1975),] we adopted the principle articulated in *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–907 (1968), where the court noted "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Circumstances for an investigatory stop exist "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot ...." *Id.,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for a probable cause arrest to simply shrug his shoulders and allow a crime to occur. *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972).

*Id.* at 577.

■ Here the officer merely wanted to ask the defendant some questions about the car theft. The officer did not act inappropriately to summon another officer, Mr. Ahrens, to pursue the defendant for questioning. When the defendant was found and asked to enter the squad car to return to the park with Officer Ahrens, he did so

voluntarily. At this point that the officer discovered defendant's past history of car thefts. When Officer Ahrens and defendant Peck returned to the stolen vehicle, Officer Ahrens informed the first officer of defendant's past record:

Q. What happened next after everyone had gotten out of the car?

A. Everybody went in front of the stolen vehicle, at which time Officer Ahrens advised me of Mr. Peck's past record.

Q. Can you tell us exactly what he said to you?

A. He said something in regards to "Peck has stolen quite a few vehicles."

With this fact in mind, it would be reasonable for the officers to suspect that defendant may have been involved in the theft they were investigating. They did not, however, attempt to arrest defendant at this point. Nevertheless, they did want to further question him about the theft. To do so, they intended to talk to him at the police station, as the testimony indicates:

Q. What happened next?

A. Probably at that point there would have been a little conference between the officers and me, and we didn't want to question Mr. Peck at that scene, or at that spot there, because we had to confront with [the car owner]. It was getting quite confusing, and so we kind of like wanted to talk to Mr. Peck back at the Grinnell Police Department.

It was at that point that the officers decided to conduct a pat-down "frisk" search to determine if defendant was armed and dangerous before transporting him to the police station. The testimony of the officer makes it clear that the pat-down search of defendant was conducted to insure the personal safety of the transporting officers who knew that they had a man who had been previously convicted of a felony:

Q. What was your purpose in making that search?

A. For my own personal safety and the fact that whenever an individual—which, I think, is more of a Grinnell policy; they would like to have the individual searched before transportation.

\*     \*     \*     \*     \*     \*

Q. Now, the Officer—that is, Officer Ahrens—did tell you he'd been involved in thefts before?

A. His history had been involved, yes.

Q. And he made this statement to you before you undertook the search?

A. Yes.

Q. Was there anything else other than his making that statement to you that led you to feel that you should conduct this search you've told us about for your own safety?

A. No.

Q. All right, that is that statement alone, "He's been involved in thefts before", is what you were relying on in making that search?

A. No, my own safety, too. Safety and the fact of his past history, yes, that's the reason I made the search.

Q. The question I'm asking you, though—maybe I'm not making myself clear. The question I'm asking you is what factors you were relying upon to feel that there was some concern as to your own safety.

A. It's always been taught to me if—whenever you have an individual involved in any kind of situation where you're going to transport the individual, you always want to search the individual for your own safety.

The decision to conduct a pat-down search to determine that defendant was not armed before transporting him is entirely consistent with the mandate of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its companion case, *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In *Terry,* the court sanctioned the pat-down "frisk" search in the interest of securing the safety of law enforcement officers:

We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not

armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives. In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry v. Ohio,* 392 U.S. at 23–24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–08. The court went on to consider the permissible scope of the frisk since allowing officers to search for weapons when there is no probable cause involves an intrusion on an individual's rights. Balancing the individual's interest with the need for protection of the police officer, the court concluded that:

Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others

was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27, 88 S.Ct. at 1882, 20 L.Ed.2d at 909 (citations omitted). Applying this test, the court in the companion case of *Sibron v. New York* found an insufficient reason for a self-protective search when the only reason the police had to suspect defendant of a crime was that he was seen talking to some known narcotics addicts over an eight-hour period. *Id.* 392 U.S. at 62, 88 S.Ct. at 1902, 20 L.Ed.2d at 934. The court specifically noted that the testifying officer entertained no fear for his safety:

Nor did Patrolman Martin urge that when Sibron put his hand in his pocket, he feared that he was going for a weapon and acted in self-defense. His opening statement to Sibron—"You know what I am after"—made it abundantly clear that he sought narcotics, and his testimony at the hearing left no doubt that he thought there were narcotics in Sibron's pocket.

*Id.* at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935.

■ The instant case presents the opposite situation. Here the testimony indicates that the defendant left the park immediately when the police arrived, and that the officer had been informed that the defendant was a convicted car thief. The officers informed defendant of their intention to conduct a frisk search whereupon the defendant removed the switchblade knife from his pocket and handed it to the officers; the officers had not attempted to touch the defendant before he surrendered the knife. It is unquestionable that, after receiving the knife, the officers had probable cause to arrest the defendant. *See State v. Shane,* 255 N.W.2d 324, 326 (Iowa 1977) (probable cause to arrest consists of circumstances which would lead a reasonable person to believe that the defendant committed the crime). When such probable cause to arrest is present, the officers are

entitled to conduct a search of the person. *State v. Morris,* 227 N.W.2d 150, 152 (Iowa 1975).

We believe that, in the first instance, the investigatory stop was appropriate. The test for such stop is based "not on the policeman's subjective theory, but whether the record discloses articulable objective facts were available to the officer to justify the stop." *Donnell,* 239 N.W.2d at 578 (citations omitted). There were sufficient facts in the instant case to meet this test. Obviously, if the keys to the stolen car were found before the plan to frisk was entertained, then there would be a stronger case, perhaps sufficient to provide probable cause to arrest. But because the testimony as to the exact time the keys were produced was somewhat conflicting, we do not afford it much weight. Moreover, that fact would not be of great significance since the defendant's suspicious conduct of immediately leaving the area plus the fact that he had been previously convicted of car theft are sufficient to justify an investigatory stop under *Terry v. Ohio* and *Donnell.* Our de novo review of these circumstances leads us to conclude that the court did not err in overruling defendant's motion to suppress.

## III.

Defendant's second contention is that the court erred in admitting into evidence certain items of physical evidence over his chain of custody objection. These items consisted of the switchblade knife, the automobile keys, and various items from the trunk of the car.

The Iowa Supreme Court has recently noted that when a chain of custody objection is made, the State must satisfy the court that it is reasonably probable that tampering, substitution, or alteration of the evidence did not occur. *State v. Gibb,* 303 N.W.2d 673, 681 (Iowa 1981). The trial court is vested with broad discretion to determine whether the requisite unbroken chain of custody is met and we will reverse only upon a clear showing that such discretion was abused. *Id.* Furthermore, in making its determination, the court may

presume that State agents would not tamper with the evidence. *State v. Branch,* 222 N.W.2d 423, 426 (Iowa 1974). Finally, the court should be cognizant that continuous custody need not be shown as a foundational element where the evidence is a solid object not easily susceptible to undetected alteration. *State v. Pierce,* 287 N.W.2d 570, 574 (Iowa 1980).

We find that the trial court did not clearly abuse its discretion. The items were placed in the Poweshiek County Sheriff's evidence locker pending trial. It appears from the testimony that the Poweshiek County Sheriff's office is in a remodeled two-story house. The "evidence locker" is a second floor closet in this house. The closet is not kept locked, and items placed in it are not marked or tagged as to which case they pertain. The closet is also near the area where attorneys and family members meet with their clients and relatives. This type of evidence locker is not a model one and we do not condone its use in such a state of disrepair. But under the *Pierce* and *Branch* rules set forth above, we refuse to find the court abused its discretion in allowing the items into evidence.

## IV.

Defendant's final contention is that the court erred in denying his motion for a directed verdict on the theft charge on the ground that the evidence was insufficient to support the verdict.

In *State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981), the court articulated the standard of review governing this type of challenge as follows:

In reviewing a motion for a directed verdict based upon insufficiency of the evidence in a criminal case, we view the evidence in a light most favorable to the State. All of the evidence must be considered, *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980), and all legitimate inferences that may be deducted therefrom will be accepted. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). A trial court's refusal to direct a verdict for a

defendant will withstand challenge if there is any substantial evidence in the record tending to support the charge. *State v. York,* 256 N.W.2d 922, 927 (Iowa 1977). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson,* 288 N.W.2d at 339.

█ Iowa Code § 714.1(4) (1981) provides that a person commits theft when he "[e]xercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate peace officer." Here the defendant admitted being in the area from which the car was stolen and was seen near the car in the park. He also admitted being in the vehicle during the time it was missing, to steal tapes and a tape player; yet nothing was missing from the vehicle. The keys were stuck into the ground where he was initially spotted by police and the defendant left the area as soon as the officer stopped his vehicle to investigate. Taking these facts in a light most favorable to the State, we believe the trial court was correct to overrule defendant's motion for a directed verdict.

Having addressed all of defendant's contentions and found them to be without merit, we affirm his conviction.

AFFIRMED.