**STATE of Iowa, Appellee,**

v.

**Leonard GREGORY, Jr., Appellant.**

**No. 67158.**

Supreme Court of Iowa.

Dec. 22, 1982.

Considered by LeGRAND, P.J., and UH-LENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

LeGRAND, Justice.

Defendant was convicted of first degree murder for the slaying of Phil Clary. He was sentenced to life imprisonment pursuant to Iowa Code section 902.1. We affirm the judgment.

According to the evidence, defendant and Clayton Manning planned to kill Manning's business partner, Phil Clary. The plot was hatched while both defendant and Manning were confined in the Jackson County Jail. Manning agreed to pay defendant $500 to do the actual shooting.

Both Manning and defendant were released from jail on the same day. Manning provided a handgun for the defendant. The plan called for Manning, with Clary as his passenger, to drive past a prearranged point and to offer defendant, who was to pose as a hitchhiker, a ride. This part of the plan was carried out. Defendant sat in the back seat while Manning and Clary were in front. At a signal from Manning, defendant shot Clary in the back of the head. Defendant and Manning dumped Clary's body in a ditch and drove off.

Manning drove to a gas station and sent defendant in to inquire about buying gas on credit. While defendant was in the station, Manning drove away, leaving defendant stranded. Defendant then hitchhiked to Dubuque, where he lived.

Manning called the Jackson County Sheriff, reporting that defendant had shot Clary and telling him where the body could be found. He also told the Sheriff that the defendant fled in the direction of Dubuque. Manning accompanied the Sheriff to the place of the shooting, where Clary, who was then still alive, was found as Manning had reported. Clary died later the same day.

The Sheriff passed this information along to the Dubuque Police Department. He asked that defendant be "held for questioning." The Dubuque police knew that defendant had previously lived with his sister in that city. A number of officers staked

Mark R. Lawson of Peckosh & Lawson, Maquoketa, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Michael Kane, Jackson County Atty., for appellee.

out the sister's home. Several others, including Capt. Egan, approached the house and knocked on the front door. Defendant's sister, Luanne Gregory, answered the door. Capt. Egan asked if defendant was there and was told he was. Capt. Egan asked permission to speak with him. The officer testified that "she stood aside and invited me in." Capt. Egan and several other officers then entered, and Capt. Egan placed defendant under arrest, after telling him he was wanted for questioning about a "shooting in Jackson County." The officers took him to the Dubuque Law Enforcement Center, where he made several inculpatory statements. He also made a written confession.

Defendant alleges several errors which raise the following issues:

1. Error in admitting the inculpatory statements made at the Dubuque Law Enforcement Center.
2. Error in refusing to give an instruction on diminished responsibility, and
3. Error in admitting defendant's confession.

I. *Inculpatory Statements.*

Defendant argues the inculpatory statements were inadmissible because they were the fruit of an illegal arrest. The arrest was made without a warrant, and therefore its validity depends on whether there was probable cause to take the defendant into custody. We believe there was.

■ Probable cause to make a warrantless arrest turns upon the circumstances of each case. The facts must rise above mere suspicion but need not be so strong as to convince the officers that the subject is guilty. They must merely provide a reasonable basis for believing the subject is guilty. *State v. Harvey,* 242 N.W.2d 330, 340 (Iowa 1976).

On the question of reasonable cause to make a warrantless arrest, we said in *State v. Freeman,* 297 N.W.2d 363, 366 (Iowa 1980):

The police need not have firm evidence which might lead to a conviction, or even

to an indictment, but merely sufficient information to cause a reasonable man to believe that defendant was involved in [the] murder.

■ At the time Capt. Egan arrested defendant, the police had information that he had been identified as the person who shot Phil Clary earlier that day in Jackson County; he had been seen near the scene of the crime shortly after it occurred; and he had been seen leaving the scene and heading toward Dubuque. We believe the officers had probable cause to arrest defendant.

■ Defendant further argues that even if there was probable cause to make an arrest, there were no exigent circumstances to excuse their failure to obtain an arrest warrant before taking him into custody. Defendant does not deny that entry to the home of defendant's sister was with her consent. Defendant seeks to relate "exigent circumstances" to the cause for arrest, but the requirement that there be exigent circumstances is relevant only if the officers entered the house without a warrant *and* without permission. *State v. Jones,* 274 N.W.2d 273, 275 (Iowa 1979). In the present case, defendant's sister gave her permission for the officers to enter. Thus, we do not reach the issue of "exigent circumstances." *See Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 63 L.Ed.2d 639, 649 (1980).

II. *Diminished Responsibility.*

Defendant was convicted of first-degree murder. One of the elements of this crime is malice aforethought. Defendant asserts error because the trial court refused to instruct the jury on the diminished responsibility as it bears on the issue of malice aforethought. Under *State v. Gramenz,* 256 Iowa 134, 142–43, 126 N.W.2d 285, 290–91 (1964), defendant was not entitled to such an instruction. We still adhere to what we said in *Gramenz.* *See State v. Moses,* 320 N.W.2d 581, 589 (Iowa 1982). The trial court did not err in refusing the requested instruction.

### III. *Corroboration of Defendant's Confession.*

Iowa Rule of Criminal Procedure 20(4) provides the confession of a defendant, unless made in open court, will not support a conviction unless accompanied by other proof that the defendant committed the offense. *State v. Schomaker,* 303 N.W.2d 129, 130 (Iowa 1981); *State v. Hobson,* 284 N.W.2d 239, 243 (Iowa 1979). Defendant argues there was not other proof in this case and that the court erred in allowing the jury to consider his confession.

The existence of corroborating evidence is an issue to be decided by the court. The sufficiency of such evidence is a question for the jury. *Id.* We believe there was ample "other proof" to submit the confession for jury consideration. The confession detailed the actions of defendant immediately before, during, and after the crime. This included the route followed before the shooting, the location of the fatal wound, the finding of the gun, the disposal of Clary's presumed lifeless body, the attempt to buy gas on credit at a local gas station, and the abandonment there of defendant by Manning. All these circumstances were verified by the testimony of state witnesses.

In addition, and even more conclusive, is the testimony of defendant at trial. It is well settled that a defendant's trial testimony may furnish corroboration of his confession. *United States v. Calderon,* 348 U.S. 160, 165–66, 75 S.Ct. 186, 188–89, 99 L.Ed. 202, 207–08 (1954); 30 Am.Jur.2d *Evidence* § 1137, at 313 (1967). We applied this same rule to accomplice testimony in *State v. Bizzett,* 212 N.W.2d 466, 468–69 (Iowa 1973), and in *State v. Williams,* 207 N.W.2d 98, 107–08 (Iowa 1973). We have since held that the rule requiring corroboration of confessions is similar to that requiring corroboration of accomplice testimony. *State v. Hobson,* 284 N.W.2d at 243.

At trial, defendant testified he shot Clary just as he had admitted in his confession. The only difference is that at trial he claimed he was coerced into doing so by Manning. He made no such claim in his confession. This trial testimony furnishes strong corroboration of defendant's confession. Defendant's claim that his confession should not have gone to the jury is without merit.

Finding no reversible error in any of the issues raised, we affirm the trial court.

AFFIRMED.