**STATE of Iowa, Plaintiff-Appellee,**

**v.**

**Jack Leroy LOSEE, Jr., Defendant-Appellant.**

**No. 83–77.**

Court of Appeals of Iowa.

June 26, 1984.

Raymond E. Rogers, Asst. Appellate Defender, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and John P. Messina, Asst. Atty. Gen., for plaintiff-appellee.

Heard by SNELL, P.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Defendant appeals from his conviction of possession of a firearm by a convicted felon. He contends that the investigatory stop of a car in which he was riding was unreasonable and that he, as a passenger, had the right to raise the issue. Defendant further contends the trial court erred in refusing to suppress evidence that guns and ammunition were seized from the car in which he was a passenger.

### I.

■ The Iowa Supreme Court has recently held, in a case of first impression, that occupants of motor vehicles, whether drivers or passengers, have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government presupposing the occupant's rightful presence in the vehicle. *State v. Eis*, 348 N.W.2d 224 (1984).

Defendant and another were in the car. Defendant was a passenger. There is nothing in the record to contravert the fact of his lawful presence in the vehicle. We therefore determine that the defendant, as a passenger, has standing to challenge the constitutionality of the stop of the vehicle.

### II.

We must now determine whether the officers in this instance had a reasonable cause to stop the vehicle.

■ The fourth amendment requires reasonable cause to stop a vehicle for investigatory purposes. When a stop is challenged on the basis that reasonable cause did not exist, the state must show that the stopping officer had specific and articulable cause to support a reasonable belief that criminal activity may have occurred. Circumstances giving rise to suspicion or curiosity will not suffice. The officer is bound by the true reason or reasons for making the stop; that is, the officer may not rely on reasons that he or she could have had but did not actually have. *State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982).

Two Des Moines police officers stopped the vehicle in which Losee was a passenger. Both were veteran officers who had patrolled the same east side area together for seven years; one had patrolled the area for nine years. One of the officers described the area as a high crime area, while the other did not. There had been a convenience store robbery in the area about a month earlier. Youths and drunks frequently caused disturbances in the area.

At 9:00 p.m. on April 22, 1982, the officers observed a gold Pontiac with its lights off illegally parked on the street near an alley. Two males were observed in the car. When the officers returned a few minutes later, the vehicle was gone. The officers became suspicious and decided to park in a nearby alley where they could observe the rear exit of Casey's store. Ten minutes later a gold vehicle pulled into a nearby private parking lot behind two local businesses and the driver turned off its lights. It was not uncommon for vehicles to use this area. Most customers use it when they leave Casey's. The officers waited ten minutes and drove toward the lot to

investigate. Neither officer was in a position to identify either passenger. As the officers approached, the car pulled out into the street. The officers then turned on their flashing lights and stopped the vehicle.

Both officers approached the vehicle and ordered the driver and passenger to exit. Both individuals were frisked and seven shotgun shells were discovered in Losee's pocket. The officer looked in the car and saw what appeared to be the wooden handle of a gun sticking out on the right passenger side of the car. The officer seized the gun.

The officers had no knowledge of any criminal activity in the area that evening, and had, just prior to the second observation, checked with a Casey's employee who advised the officers that they had not observed anything suspicious.

■ Because we are confronted with an alleged constitutional violation, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *State v. Hilleshiem*, 291 N.W.2d 314, 316 (Iowa 1980).

■ The essential purpose of the fourth amendment search and seizure proscription is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement officials, in order to safeguard the privacy and security of individuals against invasion. *State v. Hilleshiem*, 291 N.W.2d at 316.

■ The first overview courts employ to determine whether a seizure is unreasonable is whether the thing done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. *Id.*

The Iowa Supreme Court stated in *State v. Eis:*

An investigatory stop must be justified by some *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity.

Based upon the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

348 N.W.2d 224 (1984). This is a close issue. We must determine whether the officers had specific and articulable facts which, with rational inferences, could objectively be said to have reasonably warranted the car stoppage. *State v. Cooley*, 229 N.W.2d 755, 761 (Iowa 1975). In *State v. Donnell*, 239 N.W.2d 575, 577 (Iowa 1976), the court held there was a reasonable stop where a van was stopped at 2 a.m. in November in Clear Lake where many homes were vacant during the winter. In the prior year, residential break-ins totaled almost in the hundreds and furniture and other bulky items were carried away by van. Policeman did not recognize the van involved, and the van was driven slowly. The stopping officer had observed the van in three separate residential areas before stopping it.

In *Carpenter v. Sigler*, 419 F.2d 169, 172 (8th Cir.1969), an automobile with out-of-county license plates which moved past closed businesses in a town of 2,000 out-of-county license plates which moved past closed businesses in a town of 2,000 at 3:30 a.m. and pursued an erratic course through streets of the small town in which there had been a series of burglaries the stop was reasonable. In that case police officers kept the car under surveillance for a period of time, and the court held, taking all the facts together, there was sufficient cause for stopping the vehicle for identification purposes.

In *United States v. Nicholas*, 448 F.2d 622, 624–25 (8th Cir.1971), the court found that the officers were *not* justified in stopping the defendant for questioning where:

(1) the police were not investigating any particular crime;

(2) the police had no information respecting the car or its occupants;

(3) there is no showing in the record that the police had been informed of suspicious activities in the vicinity of the pool hall at the time of Nicholas's arrest, aside from their general knowledge that the area was highly trafficked in narcotics;

(4) the police observed the car for a very short time, during which time Sims sat quietly until Nicholas came out of the pool hall and entered the car;

(5) the hour, 11:15 p.m., was a reasonable hour for individuals to be abroad on the streets on a June evening;

(6) Nicholas and Sims were black men in a predominantly black area;

(7) the fact that a car has out-of-state license plates does not, of itself, indicate criminal activity.

In *State v. Cooley*, 229 N.W.2d 755, 760 (Iowa 1975), the Iowa Supreme Court found that the following factual situation did *not* support a finding that the stopping of the vehicle was for a reasonably adequate investigating purpose:

(A) the vehicle was seen parked in an area having a high crime rate;

(B) the car carried out-of-county license plates;

(C) defendant made several trips to and from a nearby tavern.

(D) defendant engaged in conversation with an individual suspected by the police to be a drug dealer and robber;

(E) occupants of the car, including defendant, were white in a predominantly black area;

(F) a woman was driving the car and defendant was a passenger.

The court found, more precisely, that: (1) no specific crime was being investigated, (2) the police had no incriminating information concerning the car or its occupants, (3) apparently neither officer had ever previously seen those occupants (4) 9:30 p.m. is a reasonable hour to be traveling city streets, (5) out-of-county license plates are frequently seen in the Des Moines area, (6) although one of the

policemen testified, Hall, the man with whom defendant was seen conversing, had been suspected of illegal narcotic sales and robberies, neither officer could say Hall had ever been convicted of any such offense, (7) both officers conceded the conduct of defendant and other car occupants was susceptible to legitimate explanation. *Id.* at 761.

The facts supporting the investigatory stop in this case are no stronger than those present in *Cooley*. Like the court in *Cooley*, we find that "the officers acted improperly upon nothing more than speculation, conjecture and surmise." *See Cooley*, 229 N.W.2d at 761. We specifically find that:

(1) no crime had been committed nor was one being investigated;

(2) the Casey's store reported no suspicious activity;

(3) the police had no incriminating information concerning this car or one of a similar description;

(4) while admittedly there had been a break-in and other disturbances at the Casey's store, the officers disagreed as to whether this was a high crime area;

(5) neither officer made any observation of the occupants of the vehicle;

(6) 9:00 p.m. is a reasonable hour to be on the streets of Des Moines; and

(7) the officer conceded that there could be another explanation for the movement of the car.

This does not present specific and articulable facts which, with rational inferences, can objectively be said to have reasonably warranted the involved car-stoppage and attendant intrusion upon Losee's constitutionally guaranteed rights. *See State v. Cooley*, 229 N.W.2d at 761. We find that the trial court erred in holding the gun and ammunition in evidence on the basis of a lawful investigatory stop. Admission in evidence of the gun and ammunition seized from the car constitutes reversible error.

REVERSED.