STATE of Iowa, Plaintiff-Appellee,

v.

Vernis Jean JOHNSON,
Defendant-Appellant.

No. 85–1697.

Court of Appeals of Iowa.

Aug. 27, 1986.

Charles Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Thomas J. Ferguson, Asst. Black Hawk County Atty., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Defendant Vernis Jean Johnson appeals from her conviction of possession of a controlled substance with intent to deliver in violation of Iowa Code § 204.401(1)(b) (1985). Defendant asserts the district court erred in overruling defendant's motion to suppress evidence obtained as a result of a warrantless arrest allegedly made without probable cause. We affirm.

In May, 1985, a doctor reported to Waterloo police that she suspected three women were fraudulently obtaining the prescription drug Ritalin from her and other area doctors. A local pharmacist had informed the doctor that the three women had come to the pharmacy in one vehicle. The doctor told police the three suspicious patients had given the names Hazel McKinney, Janet Welles and Brenda Johnson. Each woman had told the doctor they were from out of state and their children needed Ritalin because they were diagnosed as hyperactive.

Waterloo Police Officer Allen Holmes investigated the information which the women had given the doctor. He found that different persons lived at the addresses which the women had given the doctor and the utilities were not listed in their names. In addition, the persons at those addresses told Holmes they had never heard of the three women.

On June 17, 1985, the doctor notified police that McKinney had called for an appointment for the following day. McKinney was subsequently arrested outside the doctor's office when she picked up the prescription. She made a statement to police implicating defendant and Welles, whose name is actually Joyce Hill. McKinney told police defendant and Welles were from Omaha, Nebraska, and gave police a description of each woman. McKinney also told police defendant had started her in getting Ritalin. McKinney stated after getting Ritalin prescriptions filled she would sell the drugs to defendant who in turn resold the Ritalin.

A few days later the doctor notified police that Welles had made an appointment for June 20, 1985. After confirming the address Welles gave the doctor was fictitious, police set up surveillance of the doctor's office.

From the window of the doctor's office at St. Francis Hospital the police saw defendant and Welles pull into the parking lot in a vehicle with white out-of-state license plates. The police officers were too far away to identify the state named on the license plates. After the police observed defendant and Welles get out of the vehicle and enter the building three officers positioned themselves in the doctor's office. One officer waited in the hall, one officer sat in the waiting room and the third officer was in a hallway near the front desk so he could hear what was said at the front desk without being seen.

Welles went into the doctor's office for her appointment while defendant waited in the hall. Defendant paced outside the office for a while and then went in. After Welles verified her information in the doc-

tor's records she was given the Ritalin prescription and defendant and Welles left the doctor's office together.

Police officers then approached defendant and Welles in the hallway and identified themselves. Officer Holmes asked Welles to identify herself. When Welles gave an address which Holmes recognized as fictitious he told Welles he knew she did not reside at that address. Meanwhile Officer John Daws asked defendant to identify herself and she responded that her name was Jean Johnson. Daws then asked whether her name was Vernis Jean Johnson and defendant repeatedly answered "why?" At that point both women were arrested and taken to the police station.

Defendant was given her *Miranda* warnings. She then made an oral and written statement admitting she, Welles, and others were involved in illegally obtaining prescription drugs for resale. A post-arrest search of defendant and her personal effects revealed prescriptions, pharmacy sheets, a large amount of cash and other incriminating evidence.

Defendant was charged by trial information and she filed a motion to suppress all evidence seized as a result of the warrantless arrest. She argued that the arrest had been made without probable cause in violation of her constitutional rights and therefore its fruits were inadmissible. The district court overruled defendant's motion.

After trial to the district court, defendant was convicted of possession of a controlled substance with intent to deliver. This appeal followed.

## I.

Because we are confronted with an alleged constitutional violation, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *State v. Conger*, 375 N.W.2d 278, 279 (Iowa App.1985); *State v. Losee*, 353 N.W.2d 876, 878 (Iowa App.1984). Our review is de novo. *State v. Hilleshiem*, 291 N.W.2d 314, 316 (Iowa 1980). The burden is on the state to show the officer

making the arrest had reasonable ground for believing an indictable offense has been committed and has reasonable ground for believing the person to be arrested has committed the offense. Iowa Code § 804.-7(3) (1983). In determining whether the district court erred in overruling the motion to suppress we may consider not only evidence adduced in the motion to suppress but also later trial testimony. *State v. Donnell*, 239 N.W.2d 575, 578 (Iowa 1976).

## II.

The essential purpose of the fourth amendment search and seizure proscription is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officials in order to safeguard privacy and security of individuals against invasion. *Losee*, 353 N.W.2d at 878. The initial balancing of interests the court employ to determine whether a seizure is reasonable is whether the officer's action, in the sum of its form, scope, nature, incidents and effect, appears fundamentally unfair or unreasonable in the specific situation. *Id.*

A. Defendant argues her fourth amendment rights were violated when police arrested her without having probable cause and therefore evidence which police obtained in a post-arrest search of defendant and her personal effects should have been suppressed as a by-product of an unconstitutional arrest. Defendant also appears to argue her arrest was illegal because the police did not know her name at the time they stopped her for identification and arrested her.

The fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer *seizes* a *person*. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968); *State v. Gully*, 346 N.W.2d 514, 516 (Iowa 1984). If there is no detention—no seizure within the meaning of the fourth amendment—then no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). A seizure occurs only when an officer by means of physical force or show of authority has in some way restrained the liberty of a citizen. *Harlan*, 301 N.W.2d at 719.

"[N]ot all personal intercourse between policemen and citizens involves 'seizure' of persons" that implicate the fourth amendment. *State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981) (citing *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 N. 16, 20 L.Ed.2d at 905 n. 16.) In *Royer*, the court explained:

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in a public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence a criminal prosecution his voluntary answers to such questions.

*Royer*, 460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Peck*, 329 N.W.2d 680, 683 (Iowa App.1982) (quoting *State v. Donnell*, 239 N.W.2d 575, 577 (Iowa 1976)). Circumstances exist to make an investigatory stop where an officer observes unusual conduct which leads the officer reasonably to conclude in light of experience that criminal activity may be afoot. *Peck*, 329 N.W.2d at 683 (quoting *Donnell*, 239 N.W.2d at 577). The fourth amendment does not require an officer who lacks the precise level of information necessary for a probable cause arrest to simply shrug his shoulders and allow a crime to occur. *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972).

In the instant case the officers did not act inappropriately in stopping defendant and Welles. The police officers merely stopped defendant and Welles outside the doctor's office to ask them to identify themselves. The officers did not use physi-

cal force or coercion to restrain defendant's liberty. The officers simply identified themselves and asked defendant and Welles for their names and addresses. We find the officers' actions in briefly detaining defendant in order to ascertain her identity did not amount to a seizure. As such, we find the fourth amendment was not triggered.

B. Once the officers knew defendant's identity, however, they had probable cause to arrest her based on information from the doctor and McKinney plus the officers' own investigations and observations.

■ A police officer may make a warrantless arrest if the officer has "reasonable ground" for believing that an indictable public offense has been committed and reasonable ground for believing that the person to be arrested has committed it. Iowa Code § 804.7(3) (1983). Thus, if probable cause exists the police are not required to obtain a warrant before apprehending a suspected felon in a public place. *United States v. Watson*, 423 U.S. 411, 423–24, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976); *State v. Luloff*, 325 N.W.2d 103, 105 (Iowa 1982).

■ Probable cause to make a warrantless arrest turns upon the circumstances of each case. *State v. Gregory*, 327 N.W.2d 218, 220 (Iowa 1982), *cert. denied* 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1983). The facts must rise above mere suspicion but need not be so strong as to convince the officers the suspect is guilty. *Id.* In addition, the police need not have firm evidence which might lead to a conviction or even to an indictment, but merely sufficient information to cause a reasonable man to believe the defendant was involved with the criminal activity being investigated. *State v. Freeman*, 297 N.W.2d 363, 366 (Iowa 1980). Rather, probable cause for a warrantless arrest is determined in terms of the circumstances confronting a reasonably cautious and prudent police officer at the time of the arrest. *United States v. Vravis*, 761 F.2d 513, 515 (8th Cir.1985).

■ Under this guideline, we find defendant's contention police lacked probable cause to arrest her to be without merit. The police officers possessed sufficient reliable information to meet the reasonable cause standard. The officers received information about defendant from both a Waterloo doctor and McKinney. The officers then confirmed this information through their own investigations and observations.

We find the information the officers received from the Waterloo doctor to be reliable. The doctor suspected defendant, Welles and McKinney were fraudulently obtaining the Ritalin prescriptions. Prior to contacting the police the doctor was told by a local pharmacist that the three women she suspected had come to the pharmacy in one vehicle to get their prescriptions filled, even though each had told the doctor she was from out of town. Also before contacting police the doctor discovered these three women had obtained Ritalin prescriptions from other area doctors.

In addition to the information provided by the doctor, the police also had corroborating statements from McKinney. McKinney named defendant and provided police with a description of defendant. McKinney also told police defendant would be traveling with Welles and described Welles as well. Defendant and Welles matched the general descriptions which McKinney had given police. Defendant argues there was no probable cause to arrest her because the description McKinney had given was not sufficiently detailed. We find, however, the description was adequate when considered together with the other information police had available when they arrested defendant.

McKinney informed police defendant was actually from Omaha, Nebraska. On the day she was arrested, defendant arrived at the doctor's office with Welles in an automobile with Nebraska license plates. This was consistent with the information the doctor and McKinney had given police. Although the police officers could not read the state name on the license plate when

defendant drove into the parking lot, they did observe the vehicle had out-of-state license plates consistent with the color of Nebraska's license plates.

In addition to the doctor's and McKinney's statements, the police independently investigated defendant and Welles. Police discovered and repeatedly verified that defendant and Welles had given the doctor fictitious names, addresses and medical histories. When the police stopped defendant after Welles obtained the prescription, defendant identified herself as Jean Johnson rather than the name Brenda Johnson which she had given to the doctor. Moreover, defendant did not deny her full name was Vernis Jean Johnson when Officer Daws asked defendant to identify herself.

Finally, the police officers observed defendant and Welles at the doctor's office. Defendant and Welles were not just walk-in patients. Rather, they were at the doctor's office pursuant to the appointment which they had made. While Welles went into the office for the appointment and to get the prescription, defendant nervously paced the hallway outside. She finally went into the office to join Welles. After the prescription was obtained the two left the doctor's office together. There they were stopped by police officers and arrested after being identified as the persons about which the doctor and McKinney had informed police.

Given all this information known to the police at the time of arrest, it is clear the police had reasonable ground for believing defendant was fraudulently obtaining or attempting to obtain controlled substances. We find there was probable cause to arrest defendant for possession of controlled substances with intent to deliver. We further find the evidence seized and statements made subsequent to defendant's arrest were legally obtained. Therefore, we hold the trial court did not err in refusing defendant's motion to suppress this evidence and statements.

AFFIRMED.