**STATE of Iowa, Plaintiff–Appellee,**

v.

**Timothy James ANDERSON, Defendant–Appellant.**

No. 90–1546.

Court of Appeals of Iowa.

Oct. 29, 1991.

Maureen A. Braddock of Honohan, Epley, Haymond, Braddock & Brenneman, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., J. Patrick White, Co. Atty., and Kelly D. Steele and John Beasley, Asst. Co. Attys., for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Defendant, Timothy Anderson, was convicted of driving while his license was revoked, in violation of Iowa Code section 321J.21 (1989), after the car in which he was riding was stopped by a Johnson County Deputy Sheriff in rural Johnson County. The circumstances surrounding the stop are essentially undisputed.

At about 10:00 p.m. on June 1, 1990, Deputy Grabe was on routine patrol in the City of Hills. He saw Anderson and two other people get into a car on Main Street. The deputy recognized Anderson's two companions as persons with whom he had had prior professional dealings, and he observed Anderson driving the car, heading out of town. The deputy observed the make and license number of the car and decided to follow it due to his prior dealings with the two passengers.

Deputy Grabe followed in his marked police car until Anderson turned into the Hills Access Park. Having noticed no traffic violations, the deputy drove by the park turnoff, pulled off the road, and waited. The car driven by Anderson proceeded around the circular drive in the park, stopped briefly, and then continued out of the park. Because the park was so dimly lit, the deputy was unable to see what transpired during the car's momentary stop. However, Deputy Grabe testified that as the car came out of the park he observed the car's license plate illumination light was not working. He stopped the car.

As the deputy approached the car, he noticed Anderson was no longer the driver. Anderson, who the deputy had earlier seen driving the car, was seated on the passenger side. Deputy Grabe ordered Anderson out of the car and asked him if he had been driving the car earlier. Anderson said that he had. The deputy learned from a computer check that Anderson's license was revoked.

Anderson was charged with driving while his license was revoked. He filed a motion to suppress the evidence obtained from the stop on the grounds that the stop was unlawful. The motion was overruled, and Anderson was convicted. Anderson now appeals contending the trial court erred in overruling his suppression motion.

The defendant argues that his fundamental constitutional right to be free of unreasonable searches and seizures has been violated. Therefore, our review is de novo. We look to the totality of the circumstances. *See State v. Niehaus*, 452 N.W.2d 184, 187 (Iowa 1990).

■ There were two warrantless seizures in this case; the seizure of the car and its occupants, and the subsequent seizure of the defendant alone being ordered out of the car. The validity of the first seizure is dependent only upon reasonable cause. *See State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982). The validity of the second seizure is dependent upon separate reasonable cause as well as the existence of reasonable cause validating the first seizure. *State v. Becker*, 458 N.W.2d 604, 607 (Iowa 1990).

The essential purpose of the fourth amendment proscription is to impose a standard of reasonableness upon law enforcement officers to safeguard the privacy and security of individuals against invasion. *See State v. Hilleshiem*, 291 N.W.2d 314, 316 (Iowa 1980). An individual's reasonable expectation of privacy is not subject to arbitrary invasion solely at the unfettered discretion of officers in the field. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979); *see also Delaware v. Prouse*, 440 U.S. 648, 654–55, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660, 672 (1979). The key principle of the fourth amendment is reasonableness and a balancing of competing interests. *Michigan v. Summers*, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340, 348 (1981).

■ Presupposing their rightful presence in the vehicle, the occupants of a motor vehicle have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government. *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984); *State v. Losee*, 353 N.W.2d 876, 877 (Iowa App.1984). Therefore, to lawfully stop a vehicle, an officer must have a reasonable and articulable suspicion that criminal activity may be afoot. *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980).

■ Furthermore, if the only reason for the stop is a violation by the driver, further intrusion on a passenger is not justified unless some articulable suspicion exists concerning a violation of law by the passenger or further interference is required to facilitate a lawful arrest of another person

or a lawful search of the vehicle. *See Becker*, 458 N.W.2d at 607.

■ The officer's suspicion is to be examined for reasonableness in light of the totality of the attendant facts and circumstances, *Niehaus*, 452 N.W.2d at 189, and the State bears the burden of showing the evidence was lawfully obtained. *See Hilleshiem*, 291 N.W.2d at 316; *State v. Shea*, 218 N.W.2d 610, 613 (Iowa 1974). "An unlawful search taints all evidence obtained in the search or through leads uncovered by that search and bars its subsequent use." *State v. Ahart*, 324 N.W.2d 317, 318 (Iowa 1982) (citing *State v. Swartz*, 244 N.W.2d 553, 555 (Iowa 1976), *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453–54 (1963)).

Several questions are presented for our review. First we must identify what evidence, if any, was obtained as a result of each seizure. Then, if either seizure produced evidence, we must examine that seizure for reasonableness. We affirm the trial court and uphold Anderson's conviction.

I. *In Stopping the Car.* The first question is whether Deputy Grabe obtained any evidence or any leads which resulted in evidence as a result of his stopping the car and its occupants.

Certainly, Deputy Grabe observed that Anderson was no longer driving the car. This observation gave rise to the deputy's suspicions and undoubtedly prompted him to run a check on the status of Anderson's driver's license. The deputy also obtained a statement from Anderson that he had been driving the car earlier.

■ The second question is whether the State has shown by a preponderance of the evidence that Deputy Grabe, upon stopping the car, had a reasonable and articulable suspicion which led him to conclude that the driver or any of the occupants of the car may have been involved in criminal activity.

Deputy Grabe testified at the suppression hearing that he stopped the car "to

ascertain the vehicle and its occupants mainly." He also testified that he stopped the car because the car's license plate illumination light was not working, constituting a violation of Iowa Code section 321.388 (1989).

If his second assertion is true, Deputy Grabe's observation gave him reasonable cause to stop the car. *Becker,* 458 N.W.2d at 607. An officer may properly have multiple reasons for making a stop. *State v. Garcia,* 461 N.W.2d 460, 464 (Iowa 1990) (arrest was proper because officer had a proper, albeit a secondary, reason for the stop). " 'The officer is bound by the true reason *or reasons* for making the stop.' " *Id.* (quoting *State v. Bailey,* 452 N.W.2d 181, 182 (Iowa 1990)).

Deputy Grabe had filed a report wherein he stated the car was stopped because a license plate light was burned out. Nowhere in the record does Anderson assert that the light was working before, during, or anytime after the stop. Anderson places great emphasis on the fact that Deputy Grabe neither told the occupants of the car why he stopped them nor issued the driver a citation or "fix-it" ticket based on the condition of the license plate light. We are persuaded that the deputy's surprise at realizing there had been a change in drivers would explain the deputy's actions. Surely, this unexpected development warranted the focus of the deputy's attention. Undoubtedly police officers are expected to spend more effort arresting unlicensed or drunk drivers than issuing "fix-it" tickets for faulty license plate illumination lights. The greater violation may have understandably overshadowed the lesser.

We find the State has proven by a preponderance of the evidence that Deputy Grabe observed the license plate illumination light on the car was not working. We therefore, conclude that the stop of the vehicle was lawful.

II. *Upon Ordering the Defendant from the Car.* The third question is whether Deputy Grabe obtained any evidence or any leads which resulted in evidence as a result of his ordering Anderson from the car.

After ordering Anderson from the car, Deputy Grabe asked Anderson if he had been driving the car earlier. Anderson answered that he had. Although this evidence was produced *after* Anderson was ordered from the car, we do not believe that the evidence *resulted from* the order to step out of the car. Therefore, we do not believe any evidence or leads which resulted in evidence were obtained from the second seizure.

■ Even assuming the second seizure did produce evidence, that evidence need not have been suppressed. The second seizure was also lawful. The fourth question would be whether the State has shown by a preponderance of the evidence that Deputy Grabe, upon ordering the defendant from the car, had a reasonable and articulable suspicion which led him to conclude that Anderson may have been involved in criminal activity.

As Deputy Grabe approached the lawfully stopped vehicle, he noticed that Anderson, whom he had seen drive the car into the park, was no longer the driver. The deputy inferred that Anderson had switched places with one of the passengers during the brief stop in the park, and he ordered Anderson to step out of the car.

Deputy Grabe testified that he believed the switching of drivers under those circumstances gave rise to a reasonable and articulable suspicion that criminal activity may have been afoot. We agree.

Deputy Grabe had been following Anderson in a marked police car. Anderson pulled into a dimly lit park at approximately 10:30 at night, stopping only momentarily to make the switch. He had not merely pulled over to the side of the road to change drivers. His actions were consistent with an attempt to conceal the switch.

Surely, it can be said that the mere changing of drivers is consistent with innocent behavior. Moreover, it may be said to be an action consistent with safe driving when a tired driver changes with a passenger. However, Anderson and his friends were clearly not on a cross-country trip

sharing driving responsibilities along the way. Furthermore, vacationers seldom feel it necessary to conceal their safe driving techniques from the police.

To expect Deputy Grabe to have inferred that the switch was made merely because the driver was tired is less than reasonable under the circumstances of this case. The driver of the car had only driven from Main Street in Hills to the Hills Access Park. Taking into account all of the facts and circumstances surrounding the seizure, two reasonable conclusions for Deputy Grabe to have drawn from the driver switch were that Anderson was seeking to avoid an arrest for driving without a license or for operating while intoxicated.

■ III. *Attorney Fees.* The defendant also claims the trial court abused its discretion in setting the fees of his attorney. The defendant's attorney made a claim for one and four-tenths hours of court time and nineteen and one-tenth hours of out-of-court time, for a total of twenty and five-tenths hours. The defendant's attorney requested fees at the hourly rate of $50, for a total of $1,025.55. The trial court, without findings and without a hearing, awarded attorney fees of $200. The attorney for the defendant filed a motion under Iowa Rule of Civil Procedure 179(b) asking the court to enlarge its findings and to explain the findings and conclusions behind the attorney fee award. The trial court did not explain or enlarge its finding but, in a one-sentence order, denied the motion. The State contends the attorney fee issue cannot be raised with the defendant's appeal.

The State is correct. The question of a defendant's attorney's compensation is collateral to the criminal prosecution and may not be raised in appeal of the conviction. *See State v. Kempf,* 282 N.W.2d 704, 711 (Iowa 1979); *Furey v. Crawford County,* 208 N.W.2d 15, 19 (Iowa 1973). The fee issue should have been presented to the supreme court in a timely petition for certiorari. *Furey,* 208 N.W.2d at 19.

We do, however, call the trial court's attention to *Green v. Iowa Dist. Court for Mills Cty,* 415 N.W.2d 606 (Iowa 1987). In *Green,* 415 N.W.2d at 609, the supreme court urges an attorney whose claim for fees has been disputed by the trial court, to file a motion to enlarge under Iowa Rule of Civil Procedure 179(b), so the appellate court reviewing the compensation will have an adequate record for review. The court reasoned an attorney representing an indigent should be told by the trial court why a requested fee is not allowed, in order to educate the attorney to the court's future expectations. The court pointed out a cursory denial of a requested fee may discourage an attorney from representing indigents in the future. The court said: "The shortage of available appointive counsel in some counties is well-known to the bench and bar. Adequate compensation for court-appointed attorneys is integral to our efforts to encourage experienced attorneys to represent indigent defendants." *Green,* 415 N.W.2d at 609.

For all the reasons stated, the judgment of the district court is affirmed.

AFFIRMED.

OXBERGER, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I disagree with the majority's determination there was evidence to support a finding the officer had a reasonable suspicion to conclude the defendant was engaged in criminal activity. The majority has determined the fact that the defendant, while being followed by a marked police car, went into a dimly lit park and switched drivers created circumstances that gave the officer a reasonable and articulable suspicion that criminal activity may have been going on. The majority further supports their position by the fact the switch occurred off the road in a park rather than on the shoulder of the road.

The essential purpose of the fourth amendment search and seizure proscription is to impose a standard of reasonableness upon the exercise of discretion by govern-

ment officials, including law enforcement officials, in order to safeguard the privacy and security of individuals against invasion. *State v. Hilleshiem,* 291 N.W.2d 314, 316 (Iowa 1980); *State v. Losee,* 353 N.W.2d 876, 878 (Iowa App.1984).

For a stop to be valid, an officer must be acting on facts directly relating to a suspect's guilt or the suspect's conduct, and not just a "hunch" or circumstances that describe a very broad category of predominately innocent persons. *See United States v. Jones,* 759 F.2d 633, 643 (8th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985); *State v. Rosenstiel,* 473 N.W.2d 59 (Iowa 1991). There must be specific, objective facts indicating society's legitimate interests require the seizure of the particular individual. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979).

Changing drivers is an action that describes a very broad category of predominately innocent persons. The act of a driver and a passenger changing places is an action consistent with innocent behavior. It is frequently an action consistent with responsible behavior. Furthermore, the act of going to a park and off the road to change drivers is even more responsible than changing drivers on the shoulder of a roadway.

The number of innocent and/or responsible reasons for changing drivers is limitless. Reasons could be the driver is tired, the driver is sick, a passenger wants to drive the car, the driver has a cramp in his or her leg, the driver wants to sit in back with his or her friend, a spouse criticizes the other's driving, and he or she says "you drive," the car isn't driving right and the passenger drives to see what is wrong, the driver got a bug in his or her eye, or the driver needs to take medication that may affect his or her driving ability. The act of changing drivers is susceptible to a series of legitimate explanations. The existence of a legitimate explanation is an important consideration in assessing the reason for officers' actions. *See State v. Cooley,* 229 N.W.2d 755, 760 (Iowa 1975). Furthermore and very importantly, changing drivers is

frequently done for safety reasons. The reasonableness of a seizure depends on a balance between the public interest and an individual's right to personal security, free from arbitrary interference by law officers. *Brown,* 443 U.S. at 50, 99 S.Ct. at 2637, 61 L.Ed.2d at 361. The majority's decision does not strike this balance. I advance the public interest is better served not by labeling an act of changing drivers as a suspicious act to be discouraged, but by labeling it, as it very frequently is, an act of safe and responsible behavior to be encouraged.

I agree with the majority if the reason for the stop was the license plate light violation, the officer had a reason to stop the car, even though the stop would have been a violation by the driver, and further intrusion on the passenger would not have been justified unless some articulable suspicion existed concerning a violation of the law by the passenger.

Unfortunately, the record also causes me to question the officer's truthfulness on the license plate light issue. According to the officer's own testimony, he mainly stopped the car to ascertain the vehicle and its occupants. While the officer also testified he stopped the vehicle because of the license plate violation, the first time the defendant and the others in the car learned of this reason was when the officer filed a report after the incident. At this point, it was too late for the defendant to check the car to verify the deputy's position. No ticket was given for the violation, nor was a "fix-it" ticket given, even though the officer was well aware the vehicle was operable and would continue to be driven. The undisputed evidence is the light violation was not communicated to the driver or the passengers at any time during the stop. Furthermore, the deputy, by his own testimony, observed the license plate in Hills. Although he testified the lights of Hills allowed him to see the plate, he followed the vehicle out of town to a poorly lit area and did not stop the vehicle immediately for a license plate light violation. None of these facts support the officer's reason for the stop, and most of these facts contradict the officer's reason. Consequently, I do not agree with the majority's finding a

license plate light violation was the reason for the stop.

I also take issue with the majority's holding that the facts of this case suggest the defendant may have been seeking to avoid arrest for operating while intoxicated. There is no support in this record for such a holding. There is no suggestion the defendant was intoxicated. There is no evidence of erratic driving. The stopping officer did not testify he observed any signs indicating the defendant might be intoxicated. Had there been evidence of erratic driving or other evidence of intoxication, I would not be dissenting.

I would dismiss the case.

I concur with the majority on the attorney fee issue.