**STATE of Maine**

**v.**

**Francis Michael CRIDER.**

Supreme Judicial Court of Maine.

July 2, 1975.

Henry N. Berry, III, County Atty., Portland, for plaintiff.

Hewes & Culley, by Peter W. Culley, Wilson, Steinfeld, Murrell & Lane, by Thomas P. Wilson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, ARCHIBALD, and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

The defendant, Francis Michael Crider, appeals from judgments of conviction of robbery in violation of 17 M.R.S.A. § 3401 and assault of a high and aggravated nature in violation of 17 M.R.S.A. § 201. The reference judgments were entered by a Justice of the Superior Court, Cumberland County, after a jury-waived trial.

The facts may be summarized as follows:

On June 16, 1971, one Jerome Hart of Farmington, New Hampshire, was en route to visit friends in Portland, Maine. At approximately 9:00 p. m., as he was leaving the Maine Turnpike at exit number 7, he offered a ride to two hitch-hikers. The two individuals told Hart they had experienced car trouble and, in response to their request, he drove them to the disabled vehicle, where he observed two other individuals, one of whom was the defendant.

Hart joined the four individuals in attempting to start the car. When conventional means failed, he was asked to use his car to push the disabled vehicle in an attempt to "jump" start it. Fearing damage to his own automobile, which he claimed was relatively new, Hart refused. Upon his refusal, he was struck from behind on the back of his head. As he was turning around, he observed the defendant, Crider, preparing to hit him again with a .22 caliber target pistol. Hart reached for the gun and a scuffle ensued, but he was quickly subdued when one of the defendant's companions intervened and Crider pointed the gun at his head, threatening to shoot if he "tried any more foolish moves . . . ." Hart then observed several bruises and scratch marks about the defendant's face and hands. Placed in the back seat of his car, Hart was relieved of some forty-five to fifty dollars, a school ring and a lighter. While he was held at gun point, his car was used to push the disabled vehicle to a housing development parking lot. He was then driven through the streets of Portland where, ultimately, both he and his automobile were abandoned.

The victim then contacted the local police and he was taken to Maine Medical Center where he received treatment for his injuries. When released from the hospital Hart accompanied Patrolman Peter Conley to police headquarters, where he made out statements concerning the events which had transpired and attempted unsuccessfully to identify the perpetrators of the assault from police photographs.

At the request of Officer Conley, Hart retraced his eventful trip in a police cruiser and was able to locate the disabled car which was still parked in the lot where he had last seen it. Noting the license number of the automobile, the officer sought and received from the motor vehicle registry information in relation thereto which caused him to proceed to 248 Danforth Street in Portland. A brief conversation with a female occupant at that address led the officer to pursue his investigation at 14 Taylor Street instead. There, accompanied by another officer and the victim, Officer Conley knocked on the outer door. It was then about 5:30 to 6:00 a. m. Nobody answered. Noticing through the glass in the door that the entryway led into a hallway, the officer opened the door which was not locked and proceeded inside to an inner door which was closed. His knock on this door was answered by the defendant who was immediately identified by Mr. Hart as the assailant.

At that point, Officer Conley arrested Crider and searched his person. The search produced several .22 caliber bullets. At trial, the officer testified that the defendant, at the time of arrest, had scratches on his face and a cut on his head.

The defendant contends in this appeal that the progress of Officer Conley from the first to the second door was an unreasonable intrusion against which the Fourth Amendment to the Constitution of the United States affords protection and that

evidence, both testimonial and real, which was obtained during the course of the intrusion, should have been excluded from consideration at trial. Thus, he claims the Justice below erred in not suppressing, (1) the testimony of Hart describing his identification of Crider, (2) the testimony of Officer Conley describing the defendant's appearance at the doorway, and (3) the bullets seized as a result of the search incident to the defendant's arrest.[1]

In considering the merits of the defendant's claim, we must first ascertain the exact functional nature of the so-called hallway in relation to the premises entered by Officer Conley and Mr. Hart. In its brief, the State has stated that the building at 14 Taylor Street was a multiple unit dwelling, and it is claimed that the outer door passed by the police officer led into a common hallway. If this were the case, then we could safely say that the officer was legally on the premises and Fourth Amendment problems resulting from an illegal intrusion would not arise.

■■■ Police officers in the performance of their duties may, without violating the constitution, peaceably enter upon the common hallway of a multiple dwelling without a warrant or express permission to do so. See *United States v. Lewis*, D.C. N.Y., 1964, 227 F.Supp. 433; *United States v. St. Clair*, D.C.N.Y., 1965, 240 F.Supp. 338; *People v. Terry*, 1969, 70 Cal.2d 410, 77 Cal.Rptr. 460, 454 P.2d 36. There is no invasion of privacy when a policeman without force enters the common hallway of a multi-family house in the furtherance of an investigation. *State v. Smith*, 1962, 37 N.J. 481, 181 A.2d 761.

■■ The mere presence of a hallway in the interior of a single family dwelling, without more, is not in itself an invitation to the public to enter nor a foregoing by the occupants thereof of their expectancy and right of privacy. In the instant case, counsel for the State characterizes the building at 14 Taylor Street as a multiple unit dwelling or apartment, but such conclusory description is completely gratuitous and wholly without evidentiary support.

The police entry without permission or invitation in the hallway of the reference building must be viewed as an intrusion into an area in which the defendant was entitled to a reasonable expectation of privacy. But was the intrusion within the scope of the prohibitory mandate of the Fourth-Fourteenth Amendments? From the evidence in this record it is clear that Officer Conley pushed open the outer door at 14 Taylor Street only after his knocking went unanswered and he entered the hallway to reach the inner door of the apartment for the purpose of continuing his investigation which required that he speak to a person who, so he had reason to believe, might be present in the apartment and might throw some light upon the identity of the owner or operator of the automobile connected with the robbery he was investigating.

■■ It is not unreasonable for police officers, in the pursuit of criminal investigations, to seek interviews with suspects or witnesses at their homes, but their right to call upon them at their homes for such purposes does not include the right to walk in uninvited merely because there is no response to a knock or a ring. *People v. Haven*, 1963, 59 Cal.2d 713, 31 Cal.Rptr. 47, 381 P.2d 927.

The officer, at the time of his entry into the hallway, had neither warrant for an arrest or search, nor did he have probable

---

1. The defendant's argument respecting the inadmissibility of the bullets runs as follows: Since probable cause for arrest was obtained as a result of information garnered after the illegal intrusion, the arrest itself, based as it was on a tainted probable cause factor (i. e.

Hart's identification of the defendant as the assailant), was also illegal. See, *State v. Fletcher*, 1972, Me., 288 A.2d 92. Since the arrest was illegal, the defendant asserts, no warrantless search of the person can be justified as incidental thereto.

cause for the same. His entry into an integral part of a private dwelling, which in the light of the circumstances of this record could not be viewed as reasonably accessible to the public generally, constituted a trespass.[2]

Having in mind the purposes to be served by the Fourth Amendment, made applicable to the states by the Fourteenth, should we not disregard such conclusory property law concept and determine the reasonableness of the police entry by responding to the following relevant inquiry, what under all the existing circumstances, if anything, wholly defeated or partially reduced under the law the reasonable expectations of privacy which the occupants at 14 Taylor Street had a right to entertain?[3] See *Ouimette v. Howard,* 1972, 1 Cir., 468 F.2d 1363.

That the officer in this case was acting in complete good faith and performing necessary investigative duties in seeking information from the possible owner of the disabled automobile, is undisputed. Subject good faith on the part of the officer is not enough. *Beck v. State of Ohio,* 1964, 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142.

The fact of an official police investigation, absent exigent circumstances, does not authorize or justify resort "to official intrusions, without consent, upon the citizenry's private property or reasonable expectancies of privacy." *State v. Richards,* 1972, Me., 296 A.2d 129, at 137.

In order to assess the reasonableness of Officer Conley's conduct in pushing open the outer door and traversing the inside hallway to reach an inner door off that hallway, it is necessary to identify the governmental interest which allegedly justifies an official intrusion upon the constitutionally protected interests of the private citizen and balance the need to seek the information, which the police criminal investigation necessitates, against the invasion to ensue from a disregard of the constitutional privilege. See *Camara v. Municipal Court,* 1967, 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930.

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. State of Ohio,* 1968, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889. True, Officer Conley was discharging a legitimate investigative function in crime detection when he approached the premises at 14 Taylor Street, where he reasonably expected to receive information from one of the occupants of the building who, so he had reason to believe, could possibly give him some clue respecting the operator of the disabled vehicle involved in the robbery. On the other hand, it does not appear that persistent knocking at the outer door would have gotten no response, nor does the record disclose that the officer had reasonable grounds to believe the person to whom he wanted to talk was in fact at that address. Absent exigent circumstances justifying the initial entry of Officer Conley in the private hallway of the reference single dwelling house, the police presence at the inner door constituted a trespass.

Does the policeman's unlawful presence at the inner door of the defendant's apartment taint the out-of-court identification

---

2. We note that, in the context of burglary or breaking, entering and larceny or breaking and entering with intent to commit larceny, the mere "moving to a material degree something that barred the way, i. e., either a closed door or a closed window" would constitute a breaking. *State v. Mower,* 1971, Me., 275 A.2d 584.

3. This case is distinguishable from *State v. Loeffler,* 1973, 60 Wis.2d 556, 211 N.W.2d 1, where the entryway to the door of the apartment consisted of enclosed porches. The police had to go through the porches in order to knock. The instant inner hallway was part of the home.

of the defendant as the perpetrator of the assault and robbery? Should that identification have been excluded at trial, since it was made possible by reason of the illegal entry into the home?

In *Wong Sun v. United States,* 1963, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, the United States Supreme Court, in quoting from Maguire, Evidence of Guilt, 221 (1959), stated:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

In *State v. Brown,* 1971, 50 Wis.2d 565, 569, 185 N.W.2d 323, 326, the Wisconsin Court allowed that

"[b]ecause a person is illegally arrested, it does not follow necessarily a confrontation and identification are thereby tainted with illegality. To become tainted, the identification must be caused by or be the result of the illegal arrest. Here, the arrest furnished only the occasion for the identification; it did not suggest or influence it. . . . Hence an identification otherwise valid does not come under the exclusionary rule because the arrest was illegal."

At the time of the confrontation at the inner door of this so-called hallway, the defendant's freedom of action had not been abridged. He was not under arrest, nor had the police investigation reached the point where it was focusing on him as the robber. Officer Conley was still in the investigatory process of the robbery with the aid of the victim. Neither knew nor had probable cause to believe that the defendant was the perpetrator prior to the con-

frontation. No due process violation was involved, nor was the defendant's right to counsel impaired. See *State v. Butler,* 1969, Me., 256 A.2d 588; *Kirby v. Illinois,* 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411.

The viewing of one's physical characteristics at a confrontation does not make the viewer's resulting identification evidence of a testimonial or communicative nature. See, *Kirby v. Illinois,* supra.

Recognizing the right of the defendant to be protected from prejudicial procedures unnecessarily suggestive and conducive to irreparable mistaken identification by victims of crime or witnesses thereto and balancing the interest of society in the prompt and purposeful police investigation of an unsolved crime, we see, in the totality of the circumstances surrounding the defendant's confrontation by Mr. Hart including the trespassorial aspect of the initial entry into the hallway, no deprivation of any constitutional right. It was proper police conduct to seek out information from the alleged owner of the disabled car and ascertain as soon as possible, whether ownership of the automobile would furnish the key to solving the robbery. Hart's participation in the investigation at that point was for the sole purpose of determining whether the police were following the right scent. Furthermore, it was important that Mr. Hart have the opportunity to see the possible owner of the vehicle while his recollection of the events were very fresh in his mind. Neither the officer nor Mr. Hart had any idea whether the confrontation would inculpate or exonerate any of the occupants at 14 Taylor Street. As stated in *Commonwealth v. Bumpus,* 1968, 354 Mass. 494, 238 N.E.2d 343, 346:

"The 'totality of the circumstances' . . . shows no violation, intentional or otherwise, of due process of law in this confrontation at the culmination of a still continuing series of events."

We have discussed fully the position of this Court respecting one-on-one confron-

tations in the case of *State v. York,* 1974, Me., 324 A.2d 758. We need not repeat what we said in that case. It is sufficient to point out our conclusion:

"[W]here the due process issue is generated by identification procedures other than the one-way mirror, and where the question is purely one of suggestiveness, it has always been the rule that relief may be granted only when the confrontation is unnecessarily suggestive *and* conducive to irreparable misidentification, based on the totality of the circumstances."

The circumstances in this case, instead of being suggestive and conducive to irreparable misidentification, were completely neutral. It is only by chance that the defendant answered the knock on the inner door at 14 Taylor Street. At the time of the confrontation, the defendant was not in custody and the record is devoid of any prior suggestiveness on the part of the police which would have generated in Mr. Hart's mind a preconceived intent to identify the person who opened that inner door as the perpetrator of the assault and robbery upon him.

As indicated in *York,* supra:

"Where, as in the present case, the confrontation takes place within minutes [here, a few hours] of the crime, it is generally agreed that the probability of accuracy resulting from such an immediate [here, a near immediate] identification outweighs and offsets any likelihood of misidentification arising out of the inherent suggestiveness [if any in this case] of the one-man viewing."

■ The initial illegal entry into the hallway in the instant case did not taint with illegality the out-of-court identification evidence. Mr. Hart's identification of the defendant as the perpetrator of the robbery was neither suggested nor influenced by the original illegal entry. Although the officer's presence at the inner door was made possible through the initial intrusion into the hallway, its purpose was not to obtain incriminating statements from the defendant, nor was it intended to secure information on physical evidence in the apartment. The officer's presence with Mr. Hart at defendant's door, albeit an unauthorized entry, conjoined with the defendant's appearance, merely served to activate the cognitive processes of Mr. Hart's mind. The similarity between the patent objective perception and the latent conceptual observation lit up in Mr. Hart the image of the robber which, prior to the confrontation, was stored in his memory bank, but had been collected at the time the events occurred under circumstances conducive to accurate notice, an image formed before and wholly independent of the unauthorized entry.

Since the initial illegal intrusion in the hallway merely presented an opportunity to expose, through identification, information already in the mind of the witness and since it did not causally suggest or influence the same, we need not discuss the problem in terms of, whether Mr. Hart's in-court or out-of-court identification was purged of any primary taint of illegality. We are also convinced, after a careful review of the totality of the circumstances that the showup of 14 Taylor Street was neither suggestive nor conducive to irreparable misidentification, nor were the defendant's constitutional rights to due process infringed. The presiding Justice was correct in ruling that the testimony of Mr. Hart was admissible in its entirety.

■ Since Mr. Hart's identification of the defendant at the inner door of the hallway was not the *product* of the illegal initial intrusion, but was the result of the gathering of evidentiary facts prior to, and independent of, that intrusion, we do not view the situation as that of an illegal search producing evidence of probable cause. Cf. *State v. Fletcher,* 1972, Me., 288 A.2d 92. When Hart identified the defendant as his attacker, Officer Conley then had sufficient legally cognizable information to give him probable cause to arrest. This is what the officer did and

the subsequent search of the defendant, which turned up the .22 caliber bullets, was an incident to a lawful arrest and the fruits of that search were properly admitted in evidence. *United States v. Robinson,* 1973, 414 U.S. 218, 94 S.Ct. 467, 38 L. Ed.2d 427.

Officer Conley, however, also described the defendant's appearance as he observed him at the inner door of the hallway. It could be said that this information, having no independent basis, was the direct product of the illegal intrusion and thus was tainted evidence. Was the admission of such testimony reversible error? At most, it was only cumulative of the facts already in evidence. We are satisfied that any error in the admission of such testimony was harmless "beyond a reasonable doubt." *Chapman v. State of California,* 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; M.R.Crim.P. 52(a).[4]

The entry will be

Appeal denied.

POMEROY and WERNICK, JJ., did not sit.

All Justices concurring.

---

4. Rule 52. Harmless error and obvious error.
(a) Harmless Error. *Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.*