**STATE of Iowa, Appellee,**

v.

**Andrew M. BREUER, Appellant.**

No. 96–1802.

Supreme Court of Iowa.

March 25, 1998.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Ronald Robertson, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The controlling issue in this case is whether the district court erred in overruling defendant's motion to suppress from evidence at trial marijuana found in his apartment by a deputy sheriff who had gone to defendant's apartment to question defendant regarding an unrelated matter. Specifically, the issue concerns whether a person's right to be free from unreasonable searches under the United States and Iowa constitutions precludes, under the record in this case, a police officer from opening an unlocked downstairs apartment building door and entering the building without a warrant to reach an upstairs apartment door.

The district court concluded that defendant did not have a legitimate expectation of privacy in the area leading from the outer door of the apartment building to his upstairs apartment door and thus the deputy did not need a warrant to enter the building. The court further concluded that defendant later lawfully allowed the deputy into his apartment by giving consent and that the deputy therefore lawfully seized the marijuana which was in the deputy's "plain view" upon entry. The court therefore overruled defendant's pretrial motion to suppress the marijuana and associated items from evidence at trial.

On defendant's appeal, the court of appeals reversed the district court's ruling and defendant's conviction for possession of a controlled substance. On further review, we vacate the court of appeals decision and affirm the district court's judgment, but for reasons other than those articulated by the district court.

### I. Background facts and proceedings.

On May 5, 1996, at approximately 9:25 p.m., deputy sheriff William Dideriksen received a complaint that a black S–10 pickup truck had been driven recklessly on a public street in Middleton. The complainant advised that the owner and driver of the truck might live by the railroad tracks near Boundary Street in Middleton. Dideriksen proceeded to that location and observed a pickup truck parked on High Street matching the description listed in the complaint. Dideriksen ran a check of the pickup's license plate and learned that the vehicle was registered to defendant, Andrew M. Breuer. He also had information that defendant possibly lived in an upstairs apartment at 300 High Street. Dideriksen did not know Breuer prior to this incident.

The residence at 300 High Street consists of a large house that is divided into two apartments. The building has a porch with two doors. The left door leads to defendant's upstairs apartment. The entryway to defendant's apartment consists of an outer screen door with a wooden inside door. Inside the doorway is a stairway that leads to defendant's upstairs apartment. Defendant cleans the stairway/hallway and pays the utilities for the lights in the stairway. According to defendant, guests usually ring the doorbell and wait for defendant to greet them at the front door of the apartment building.

Upon arriving at defendant's apartment building, deputy Dideriksen rang the doorbell next to the screen door but received no response. The wooden inside door was open. Dideriksen opened the unlocked screen door, walked upstairs to the second floor apartment and knocked on the door at the top of the stairs. Breuer answered the door. As Breuer opened the door, Dideriksen noticed a strong odor of burning marijuana coming from inside the apartment. Dideriksen told Breuer that he was there regarding a driving complaint and asked if he could come inside the apartment. Breuer allowed Dideriksen inside the apartment.

Once inside the apartment, Dideriksen warned Breuer about the complaint concerning his driving. While speaking to Breuer, Dideriksen also observed a green substance in an ashtray sitting on the coffee table which he thought to be marijuana. Four other people were also present in the living room area of the apartment. Dideriksen asked Breuer what he and the others were doing and Breuer responded by saying that he had "just smoked a joint." Dideriksen asked Breuer where the rest of the drugs were and Breuer produced a plastic bag containing a green, leafy substance and a plate containing seeds, roaches and rolling papers. Breuer stated that these items belonged to him.

Dideriksen told Breuer that he would have to conduct a search and asked if there were any other drugs or paraphernalia in the apartment. Breuer then produced another marijuana cigarette. Dideriksen seized the marijuana and related items and issued defendant a citation for possession of a controlled substance. See Iowa Code § 124.401(3) (1995).[1]

Later, a trial information was filed charging Breuer with possession of a controlled substance, to wit: marijuana. Breuer pled not guilty to the charge and filed a pretrial motion to suppress the marijuana and other items seized from his apartment. See Iowa R.Crim. P. 10(2)(c), 11(1). Breuer argued that he had an expectation of privacy in the stairway of his apartment building, and that deputy Dideriksen's warrantless entry into the apartment building violated his right to be free from unreasonable searches and seizures guaranteed under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. He thus argued that Dideriksen's alleged illegal warrantless entry into the building

---

1. This section is now codified as Iowa Code section 124.401(5) (1997).

invalidated his consent allowing Dideriksen into his apartment.

After an evidentiary hearing on the motion, the district court determined that Breuer did not have a legitimate expectation of privacy in the stairway area leading from the outer door of the apartment building to his apartment. The court reasoned that salesmen and other persons had access to the stairway and that a police officer should not be restricted to a different standard. The court therefore concluded that deputy Dideriksen had a right to enter the outer door of Breuer's apartment building and to proceed up the stairway to Breuer's apartment door without a warrant. The court further determined that Breuer consented to Dideriksen's entrance into his apartment and that the subsequent seizure of the marijuana and other items was therefore lawful. The court overruled Breuer's motion to suppress the evidence seized in his apartment.

Breuer waived his right to a jury trial. A bench trial was held on a stipulated record consisting of the minutes of testimony that accompanied the trial information and the evidence adduced at the motion to suppress hearing. The district court convicted Breuer as charged and imposed sentence.

Breuer appealed his conviction, asserting that the district court erred in overruling his motion to suppress. We transferred the case to the court of appeals which reversed the district court's ruling and judgment.

We granted the State's application for further review. *See* Iowa R.App. P. 402. We vacate the decision of the court of appeals and affirm the district court's judgment.

## II. Standard of review.

In assessing alleged violations of constitutional rights, our standard of review is de novo; we make an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Howard,* 509 N.W.2d 764, 767 (Iowa 1993). In reviewing the district court's ruling on Breuer's motion to suppress, we consider both the evidence presented during the suppression hearing and that introduced at trial. *State v. Jackson,* 542 N.W.2d 842, 844 (Iowa 1996). The adverse ruling on Breuer's motion to suppress preserved error for our review. *State v. Brown,* 309 N.W.2d 425, 426 (Iowa 1981).

## III. Background law.

On appeal, defendant Breuer contends that deputy Dideriksen's actions in opening the unlocked outer door of the apartment building and walking up the stairway to his apartment door constitute an illegal search in violation of both the United States and Iowa constitutions' search and seizure clauses. "[T]he language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment." *State v. Showalter,* 427 N.W.2d 166, 168 (Iowa 1988). He thus argues that the illegal search invalidated his consent allowing deputy Dideriksen into his apartment.[2] *See United States v. Howard,* 828 F.2d 552, 556 (9th Cir.1987) (consent to search premises after officers' illegal entry into residence was tainted and therefore invalid).

The State contends that Dideriksen's actions do not constitute a search because Breuer did not have a legitimate expectation of privacy in the stairway area of his apartment building. Therefore, the State argues that deputy Dideriksen did not need a warrant to open the unlocked outer door and

---

**2.** At oral argument, Breuer's attorney suggested that Breuer's consent allowing deputy Dideriksen into his apartment was invalid because it was . involuntary, apparently implying that Breuer felt he did not have authority to refuse consent and only allowed Dideriksen into the apartment because of a "show of authority." However, we find nothing in the trial record showing that Breuer raised the issue of whether his consent was voluntary in conjunction with his motion to suppress, or at trial. Breuer therefore failed to preserve error on this issue as a basis for challenging Dideriksen's actions on appeal. *See State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984) (issues must be presented to and ruled upon by the trial court to be preserved for appeal). For purposes of this appeal, we only consider whether Breuer's consent allowing Dideriksen into his apartment was tainted by Dideriksen's initial entry into the building.

proceed up the stairway to defendant's apartment door. Before considering the merits of the parties' arguments, we find it helpful to review the law concerning unreasonable searches.

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV; *see also* Iowa Const. art. I, § 8. We have stated:

> The essential purpose of the proscriptions of the Fourth Amendment "is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents in order 'to safeguard the privacy and security of individuals against arbitrary invasion. . . .' "

*State v. Loyd,* 530 N.W.2d 708, 711 (Iowa 1995) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979)); *see also State v. Anderson,* 479 N.W.2d 330, 332 (Iowa App.1991) ("The key principle of the fourth amendment is reasonableness and a balancing of competing interests."). The Fourth Amendment does not protect against all government searches. Rather, the law is well established in Iowa that the Fourth Amendment protects only against unreasonable government intrusion upon a person's legitimate expectation of privacy. *See State v. Fox,* 493 N.W.2d 829, 831 (Iowa 1992); *State v. Becker,* 458 N.W.2d 604, 608 (Iowa 1990); *Showalter,* 427 N.W.2d at 169; *State v. Flynn,* 360 N.W.2d 762, 764–65 (Iowa 1985). Thus a search is said to have occurred when the government unreasonably intrudes upon an individual's reasonable or legitimate expectation of privacy. *United States v. Karo,* 468 U.S. 705, 712, 104 S.Ct. 3296, 3302, 82 L.Ed.2d 530, 539 (1984); *accord State v. Winkler,* 552 N.W.2d 347, 351 (N.D.1996). Under this rule, the government must obtain a search warrant prior to unreasonably searching, or entering, an area where a person possesses a reasonable expectation of privacy, subject to certain well-established exceptions. *See State v. Kitchen,* 572 N.W.2d 106, 108 (N.D.1997). These exceptions include searches based on consent, plain view, exigent circumstances, and searches incident to arrest. *Howard,* 509 N.W.2d at 766–67.[3] Evidence obtained in violation of the Fourth Amendment is inadmissible at trial under the exclusionary rule. *See State v. Ahart,* 324 N.W.2d 317, 318 (Iowa 1982) (citing *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453–54 (1963)).

Applying these principles, the controlling issue is whether deputy Dideriksen's actions constitute an unlawful search in violation of the United States and Iowa constitutions.

■ We have established a two-step approach in analyzing the constitutionality of a search under the Fourth Amendment. First, the person challenging the search must show that he or she had a legitimate expectation of privacy in the area searched. *See State v. Halliburton,* 539 N.W.2d 339, 342 (Iowa 1995) (defendant did not have reasonable expectation of privacy in mother's automobile so court did not reach issue concerning reasonableness of search); *Becker,* 458 N.W.2d at 608; *State v. Eis,* 348 N.W.2d 224, 226 (Iowa 1984).

■ If we conclude that a person has a legitimate expectation of privacy with respect to a certain area, we must then decide whether the search was unreasonable; in other words, we consider whether the State unreasonably invaded that protected interest. *See Halliburton,* 539 N.W.2d at 342; *Becker,* 458 N.W.2d at 608.

*IV. Did defendant have a legitimate expectation of privacy in the area leading from the front door of his apartment building to his apartment door?*

■ We first must determine whether Breuer had a legitimate expectation of privacy with respect to the stairway of his apartment building.

The State contends that Breuer did not have a legitimate expectation of privacy in the stairway leading to his apartment and thus deputy Dideriksen had the right to open

---

**3.** The State makes no argument that deputy Dideriksen's initial entry into the apartment building falls under one of the exceptions to the warrant requirement.

the unlocked, outer screen door of the apartment building and proceed up the stairway to Breuer's apartment door without a warrant.[4]

The determination of whether a person has a legitimate expectation of privacy with respect to a certain area is made on a case-by-case basis, considering the unique facts of each particular situation. *State v. Edgeberg,* 188 Wis.2d 339, 524 N.W.2d 911, 915 (Wis.Ct.App.1994).

> The correct test of legitimacy is not whether the individual has chosen to conceal some private activity but "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment."

*Flynn,* 360 N.W.2d at 765 (quoting *Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 227 (1984)). Additionally, the expectation of privacy must be one that society considers reasonable. *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring). "Whether expectations of privacy are reasonable involves 'reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Showalter,* 427 N.W.2d at 170 (quoting *Rakas v. Illinois,* 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 430–31 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978)).

In a case with facts similar to those involved here, the Supreme Court of Maine held that a defendant had a legitimate expectation of privacy in the hallway of his single-dwelling house, and thus an officer's warrantless entry into the outer hallway of defendant's home constituted a trespass. *See State v. Crider,* 341 A.2d 1 (Me.1975). Although the court recognized that tenants in multi-unit apartment buildings do not have a legitimate expectation of privacy in the common hallways of the apartment building, the court noted that the defendant in *Crider* lived in a single-family dwelling. *Id.* at 4.

The court also recognized that although law enforcement officers may question people at their homes concerning criminal investigations, the court stated this "right to call upon [people] at their homes for such purposes does not include the right to walk in uninvited merely because there is no response to a knock or a ring [at an outer door]." *Id.* Additionally, the court stated "it [did] not appear that persistent knocking at the outer door would have gotten no response." *Id.* at 5.

Cases from other jurisdictions have reached a similar conclusion. *See United States v. Carriger,* 541 F.2d 545, 550 (6th Cir.1976) (holding officers' actions in gaining entry to a defendant's locked apartment building by crawling through landlord's window, and then looking into defendant's apartment through the transom window constituted an illegal search); *United States v. Fluker,* 543 F.2d 709, 716–17 (9th Cir.1976) (holding defendant had reasonable expectation of privacy as to hallway separating apartment door from outer locked door of three-unit apartment building for purposes of federal statute requiring officers to give notice of authority and purpose before effecting a forced entry to execute a search warrant).

After reviewing the record in light of the principles discussed above, we conclude that Breuer had a legitimate expectation of privacy with respect to the stairway of his apartment building.

Breuer testified that visitors usually waited at the outer door after ringing the doorbell. This fact supports a finding that Breuer had a subjective expectation of privacy in the stairway.

Additionally, the trial record shows that there were only two apartments in the building and that Breuer was the only tenant who used the hallway. Thus, the hallway was not an area used by other people coming and going in the building and therefore cannot be

---

**4.** The State apparently concedes that deputy Dideriksen had no statutory authority to enter defendant's apartment for purposes of making an arrest pursuant to Iowa Code section 804.15, which gives an officer authority to enter a person's home without a warrant when making an arrest. *See also* Iowa Code § 804.7 (listing instances where officer may make warrantless arrests). Nor does the State argue that deputy Dideriksen's entry into the apartment building was justified based on probable cause.

considered a "common area."[5] Given these facts, we believe that society would recognize Breuer's expectation of privacy as reasonable. We conclude Breuer had a legitimate expectation of privacy in the area leading from the outer door of the apartment building to his apartment door. Dideriksen's actions thus constitute a search under the United States and Iowa constitutions.

### V. Did the State unreasonably invade defendant's legitimate expectation of privacy?

■ As discussed above, we conclude that Breuer had a legitimate expectation of privacy in the stairway of his apartment building and thus, Dideriksen's actions constitute a search under the Fourth Amendment. We must now decide whether the search was unreasonable, in other words, we consider whether the State unreasonably invaded Breuer's legitimate expectation of privacy with respect to the stairway area of his apartment building.[6] *See Halliburton,* 539 N.W.2d at 342; *Becker,* 458 N.W.2d at 608 (driver of automobile had legitimate expectation of privacy in passenger compartment of his vehicle, but State did not unreasonably intrude on that interest where officer had probable cause to stop vehicle).

■ A. In examining the lawfulness of deputy Dideriksen's actions, we balance the intrusion on Breuer's Fourth Amendment interests against promotion of legitimate governmental interests. *State v. Keehner,* 425 N.W.2d 41, 44 (Iowa 1988) (citing *Delaware v. Prouse,* 440 U.S. at 654, 99 S.Ct. at 1401, 59 L.Ed.2d at 674). This balancing of interests involves a consideration of "whether the officer's action, in the sum of its form, scope, nature, incidents and effect, appears fundamentally unfair or unreasonable in the specific situation." *State v. Johnson,* 395 N.W.2d 661, 664 (Iowa App.1986) (officer's actions in briefly detaining and questioning defendant

to determine identity did not constitute a seizure under the Fourth Amendment). This balancing of competing interests also ensures "that the individual's reasonable expectation of privacy is not subject to the unbridled discretion of the officer in the field," *Keehner,* 425 N.W.2d at 44, and is necessary as part of "our task to properly and effectively manage the 'necessar[y] . . . conflict between the need to apply realistic standards of law enforcement in such cases and the need to protect citizens from unreasonable intrusions into their privacy.'" *State v. Wiese,* 525 N.W.2d 412, 415 (Iowa 1994) (quoting *People v. Parisi,* 393 Mich. 31, 222 N.W.2d 757, 759 (1974)).

B. In determining whether a law enforcement officer's actions unlawfully infringed upon a person's reasonable expectation of privacy, the Eighth Circuit Court of Appeals stated a court should consider the following:

> [F]irst, whether the agents' observation was made in a place to which [defendant's] expectation of privacy would reasonably be said to extend; and, second, if so, whether the agents' intrusion was justified "by some . . . legitimate reason for being present unconnected with a search directed against the accused."

*United States v. Anderson,* 552 F.2d 1296, 1299–1300 (8th Cir.1977) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971)). In *Anderson,* the court noted that although federal agents invaded defendant's reasonable expectation of privacy by walking around to the rear of defendant's home, the court concluded that the initial intrusion was justified by the agents' legitimate objective of finding defendant to question him about a theft. *Id.*

The North Dakota supreme court recently considered an issue very similar to the one raised in this appeal. In *Kitchen,* 572 N.W.2d 106, police officers approached an

---

5. Thus, those cases holding that a tenant does not have a reasonable expectation of privacy in hallways or common areas of multi-unit apartment buildings are not applicable to this case. *See United States v. Nohara,* 3 F.3d 1239, 1242–43 (9th Cir.1993); *United States v. Acosta,* 965 F.2d 1248, 1251–52 (3d Cir.1992); *United States. v. Concepcion,* 942 F.2d 1170, 1172 (7th Cir. 1991); *United States v. Barrios–Moriera,* 872 F.2d

12, 14 (2d Cir.1989); *United States v. Eisler,* 567 F.2d 814, 816 (8th Cir.1977).

6. Neither the district court nor the court of appeals considered this second step in the analysis we established in *Halliburton,* 539 N.W.2d at 342.

outer door of co-defendants' home and rang the doorbell to serve a warrant. The officers could hear loud music playing inside the residence, but no one answered the doorbell. The officers then entered an enclosed entryway and knocked on a second door leading into the living area of the home. One of the defendants opened the inner door and met the officers in the entryway. The officers spoke to the defendant a few minutes until that defendant went back into the residence to get another person with whom the officers wanted to speak. As the defendant opened the inner door to step back into the residence, the officers smelled an odor of marijuana coming from inside the residence. The officers eventually entered the residence and secured the premises until a search warrant was obtained. Officers searched the residence and seized marijuana and drug paraphernalia.

Defendants argued that the marijuana should be suppressed because they had an expectation of privacy in the entryway to their home and thus the officers' warrantless entry into that part of their home was an illegal search under the Fourth Amendment. *See id.* at 108.

The North Dakota supreme court held that defendants did not have a legitimate expectation of privacy in the entryway to their home, and even if they did, it was not unreasonable for the officers to step into the entryway to knock at the inner door. First, the court noted that police officers may enter certain areas around a home where a person may have a reasonable expectation of privacy, when the officers are conducting legitimate business. *Id.* at 109. Second, the court noted that the officers waited a reasonable time after ringing the doorbell and that the loud music playing inside the home might have prevented the occupants from hearing the doorbell. *Id.* at 111. Additionally, the court noted that even though defendants did not subjectively expect visitors to enter the outer door and walk into the entryway, the court noted that the door to the entryway was unlocked and thus "was impliedly open to at least some access by the public." *Id.* at 112.

After careful consideration of the facts of this case, and of the principles discussed in the above-cited authorities, we conclude that deputy Dideriksen did not unreasonably invade Breuer's legitimate expectation of privacy by opening the unlocked outer door of the apartment building and proceeding up the stairway to Breuer's apartment door without a warrant. *See also Artes–Roy v. City of Aspen,* 31 F.3d 958, 962–63 (10th Cir.1994) (no search, intrusion minimal where city building inspector opened door and stepped into entryway of home).

First, the trial record shows that Dideriksen went to defendant's apartment to question him concerning the reckless driving complaint. Thus, Dideriksen's intrusion into defendant's expectation of privacy with respect to the hallway was related to a legitimate objective of gathering information as part of an investigation. *See Anderson,* 552 F.2d at 1300. Additionally, we note that Dideriksen observed a pickup truck parked in front of the apartment building matching the description of the vehicle listed in the reckless driving complaint. This suggests that Dideriksen reasonably expected Breuer to be at his apartment and negates any suggestion that Dideriksen randomly entered Breuer's apartment building.

Second, there are no facts in the trial record that suggest Dideriksen went to defendant's apartment to search for drugs or that he had any prior knowledge that defendant was involved in drug activity. In fact, nothing in the trial record suggests that Dideriksen knew defendant prior to the date in question. We thus reject Breuer's contention that deputy Dideriksen's actions were a mere pretext for gaining entry into his apartment to search for drugs or for some other illegal purpose. *See id.* at 1300 n. 5 (rejecting defendant's argument that federal agents' purpose in walking to rear of home to determine if someone was with barking dog was pretext for real objective of conducting an illegal search).

■ Furthermore, a person does not have a right to be free from inquiries by law enforcement officers. In fact, the law is well-established in Iowa and other jurisdictions that law enforcement officers may go onto a person's private property, approach the residence, and knock on a door to speak

with a person regarding a police investigation. *See State v. Dickerson*, 313 N.W.2d 526, 532 (Iowa 1981) (officers did not invade defendant's reasonable expectation of privacy by going to his door). We held in *Dickerson* that an officer's observations into an entryway while standing at an outer door did not constitute a search because the "visual observations through the window of the door were not an intrusion into a reasonable expectation of privacy," and thus the officer's observations did not constitute a search for purposes of the Fourth Amendment. *See id.; see also State v. Crea*, 305 Minn. 342, 233 N.W.2d 736, 739 (1975) (officers did not violate defendant/homeowner's expectation of privacy by walking onto driveway and observing items thought to be stolen property in plain view from driveway).[7]

Although we have not addressed the issue, some courts have held that if no one responds to an officer's knock at the front door of a residence, then the officer may lawfully walk around the home to look for another door, "all as part of a legitimate attempt to interview a person." *United States v. Daoust*, 916 F.2d 757, 758 (1st Cir.1990) ("[T]here is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview a person."); *see also Anderson*, 552 F.2d at 1300. In light of these principles, we believe that deputy Dideriksen's actions in opening the unlocked outer door and proceeding up the stairway to Breuer's apartment door, as part of a legitimate objective to question Breuer regarding the reckless driving complaint, constitute a minimal intrusion upon Breuer's expectation of privacy with respect to the stairway.

In considering this case, we recognize a citizen's expectation of privacy in those areas closely related to the home and the right to be free from unreasonable searches and seizures. The nature of this interest is substantial, and in fact, is the "chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732, 742 (1984) (quoting *United States v. United States Dist. Ct.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972)).

Against this interest we balance the State's interest in its ability to gather information relating to law enforcement investigations. Clearly, members of the public share this interest. We believe that the State's interest here outweighs the minimal intrusion upon Breuer's expectation of privacy.

The argument could be made that there were other less intrusive means available to deputy Dideriksen instead of opening the outer door and walking up the stairway to knock on defendant's apartment door to speak to him. For instance, after receiving no answer at the outer door, deputy Dideriksen could have left Breuer's residence and later tried to contact Breuer by telephone or other means, or attempted to obtain a warrant to enter the building. Under this analysis, an officer would be required to leave a residence, even though the officer has reason to believe a person who may have important information relating to an investigation is inside the residence, simply because the officer receives no response at an outside door.

We believe that such a result is impractical. First, " '[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' " *State v. Huisman*, 544 N.W.2d 433, 439 (Iowa 1996) (holding that Constitution does not require that police seek less invasive

---

7. *See also United States v. Garcia*, 997 F.2d 1273, 1279–80 (9th Cir.1993) (no search where undercover officers looked into defendant's apartment through window while standing on back porch which they erroneously thought was the front door to apartment); *Anderson*, 552 F.2d at 1300 (exclusionary rule did not require suppression of evidence observed by federal agents through defendant's window when agents walked to rear of home after knocking on front door to determine if someone was with barking dog; and thus invasion of defendant's expectation of privacy justified); *United States v. Hersh*, 464 F.2d 228, 230 (9th Cir.1972) (no search when police officers looked through window while standing at front door in attempt to locate and interview defendant); *State v. Hornback*, 73 Wash.App. 738, 871 P.2d 1075, 1078 (1994) (entry by law enforcement officers onto areas of the curtilage, such as driveways, walkways or access routes leading to a residence, does not constitute a search implicating the Fourth Amendment).

alternatives to impoundment of vehicle) (quoting *Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65, 72 (1983)). Furthermore, we believe that forcing an officer to leave a location, as in this case, when the officer has reason to believe a person who might have information concerning an investigation is at that location, would result in unnecessary delay and a waste of law enforcement resources when the officer could otherwise simply enter the hallway to knock on the apartment door.

From a societal standpoint, we also may consider the scenario where an officer goes to a person's residence to notify him or her that a family member has been in an accident or for some other serious matter which necessitates that the officer immediately speak to someone inside the residence. Under this scenario, we believe the general public would welcome an officer's intrusion through an unlocked outer door, and undoubtedly would be disappointed if the officer did not immediately make an attempt to speak to the person inside the residence. Were we to reach a different conclusion in this case, the officer would be forced to wait at the outer door or be turned away.

In summary, we conclude that deputy Dideriksen's actions in opening the unlocked outer door of Breuer's apartment building and proceeding up the stairway to knock on Breuer's apartment door did not unreasonably invade Breuer's legitimate expectation of privacy with respect to the stairway.[8]

### VI. Disposition.

We conclude that Breuer had a legitimate expectation of privacy in the area leading from the outer door of the apartment building to his apartment door and that deputy Dideriksen's actions in opening the unlocked outer door constitute a search under the Fourth Amendment. However, we further conclude that the search did not unreasonably invade Breuer's expectation of privacy with respect to the stairway. The district

court properly overruled defendant's motion to suppress. We therefore vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

8. We do not intend for our opinion to establish a per se rule that a person does or does not have a legitimate expectation of privacy in a stairway leading to an apartment. This is because the determination of whether a person has a reasonable expectation of privacy in a given area must be decided on a case-by-case basis. *See Edgeberg,* 524 N.W.2d at 915. Our decision is therefore limited to the facts of this case.