## IN THE COURT OF APPEALS OF IOWA

No. 16-0555
Filed March 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MATTHEW L. WILSON,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Washington County, Myron L. Gookin, Judge.

        Matthew Wilson appeals from the judgment and sentence following a jury verdict finding him guilty of sexual abuse in the second degree.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., Vaitheswaran, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Matthew Levi Wilson appeals from the judgment and sentence following a jury verdict finding him guilty of sexual abuse in the second degree.

## I. Background Facts and Circumstances

Wilson's daughter, M.W., reported that when she was eight years old and traveling in Wilson's van, he asked her, "Do you want to stop somewhere and have it." Thereafter, Wilson stopped the van on a side road and told her to get in the back bench of the van. Wilson followed her, unzipped his shorts, exposed his penis, had her put her hand on it, and told her to shake it like a bottle. M.W. observed "white stuff" come from Wilson's penis. When a black truck drove by the van, Wilson told M.W. they should leave. Wilson retrieved a sock from the van, cleaned himself up with it, and threw it out the window. Wilson asked her not to tell anyone. However, when she was questioned on September 15, 2015, by Amanda Seymour, a Department of Human Services worker, M.W. gave a rendition of the above events. Seymour contacted Washington County Deputy Chad Ellis, and an investigation began.

On October 8, Seymour and Ellis conducted an interview of Wilson at his father's home, where Wilson was living. It is the nature of that interview with Wilson, conducted by Ellis, that is an issue in this appeal. Wilson's father was asked to leave the room prior to conducting the interview. Ellis, who was dressed in street clothes, had a badge on his belt and a firearm on his right side. Wilson had had prior contact with Ellis as a law enforcement officer.

Ellis and Wilson first discussed Wilson's family concerns and the extra burdens that had been placed on him because of his wife's illness. Ellis falsely

represented to Wilson a witness who had driven by could identify Wilson. Ellis questioned Wilson by conveying an attitude of empathy and concern, saying such things as, "We're just trying to understand," and that he and Seymour wanted "to get help" and "understand why it happened." Ellis continued by saying they understood that "[t]hings happen, man. We get it," and he asked [Wilson] to "[t]ell us why. Why you stopped." Wilson insisted there was nothing to say. Ellis continued expressing empathy and stating the family needed closure, that he and Seymour were trying to get help for those that needed it, and that it was for the family's good. Ellis suggested that counseling and therapy were available. Ellis stated that he knew Wilson was sad that it happened, that they could remove the weight off of Wilson's shoulders, and that what had happened had to be bugging Wilson. After continuing to go through a narration of what Ellis thought had happened, Ellis would express empathy by saying, "You are sad and wished this hadn't happened." Ellis then asked Wilson if he left the driver seat when he parked the van, and after a period of silence, Wilson said they sat in the third seat of the van. Finally, Wilson said M.W. touched him on the penis. Ellis asked Wilson if she had been shaking it like a pop bottle, and Wilson apparently responded affirmatively. Ellis followed by asking, "So you had an erection?" and asking whether he ejaculated. Wilson again responded affirmatively. At that point, Ellis believed he had probable cause to make an arrest and read Wilson his rights.

Wilson filed a motion to suppress the confession made at the interview, alleging that Ellis induced his confession with promises of leniency. The motion was overruled, and the denial of the motion is the focus of Wilson's appeal.

## II. Error Preservation

Adverse rulings on motions to suppress preserve error for appellate review. *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998).

## III. Standard of Review

Challenges to the admissibility of confessions are reviewed for errors of law, and when a claim of a promise of leniency is made in challenging a confession, the common law evidentiary test is applicable when "there is no dispute as to the words used" or their meaning under the circumstances. *State v. Polk*, 812 N.W.2d 670, 674 (Iowa 2012) (citation omitted).

## IV. Merits

Wilson maintains Ellis's interview contained implied promises of leniency in order to obtain a confession. An accused's confession is not admissible if procured by an improper promise of leniency. *Id.* Wilson maintains the interview Ellis conducted is precisely like the interview found to have been inadmissible because of a promise of leniency in *State v. Howard*, 825 N.W.2d 32, 40-41 (Iowa 2012) (holding Howard's confession was inadmissible because the detective created a false impression that if Howard admitted to the sexual abuse, he would be sent to a treatment facility in lieu of further punishment).

Iowa follows the evidentiary test to determine the status of a confession as opposed to the totality-of-the-circumstances test. *State v. Madsen,* 813 N.W.2d 714, 726 (Iowa 2012). Under the evidentiary test, a confession cannot be received into evidence if the suspect has been influenced by any threat or promise. *Id.* at 724. It follows that an admission into evidence of such a confession is a matter of law to be decided by the court. *See State v. Wilson*,

247 N.W.2d 736, 740 (Iowa 1976) (holding that where a defendant objects to the admissibility of an alleged confession, the trial court must conduct an evidentiary hearing outside the presence of the jury and make the requisite findings and determination as to its admissibility). Our supreme court's retention of the per se exclusionary rule eliminates the need of determining if, in fact, the defendant relied on a promise of leniency in confessing. *Madsen,* 813 N.W.2d at 726. Our supreme court has stated that the purpose of the evidentiary rule is to provide clarity. *Id.* at 725. The confession must be excluded if "*any degree* of influence by force or *other inducement*" has been exerted on the suspect. *Id.* at 726. The evidentiary rule focuses on an examination of the language used to determine whether the investigator's questions gave even an implicit promise of any reward as a result of a confession. *Howard*, 825 N.W.2d at 40. We can conclude from the sources cited that it is an objective test, dependent on any inference that could reasonably be drawn from the language of the interviewer used and their meaning, explicit or implicit, under the circumstances. *Madsen*, 813 N.W.2d at 726 ("The use of a per se exclusionary rule eliminates the need for the court to attempt to read the mind of defendant to determine if his confession, in fact, was induced by or made in reliance upon the promise of leniency.").

The case under consideration can be easily distinguished from *Howard*. In *Howard*, the investigator asked, "How do we get the help, get you the help you need?" 825 N.W.2d at 36. Then later the investigator asked, "Do you need help?" and "Do you think we should help you? There's people out there that can help you." *Id.* The interviewer stated there are treatment centers with doctors and nurses that treat sex addiction. *Id.* at 36-37. He asked, "What kind of help

do you need?" and later asked, "The first thing is that we get you help, right?" *Id.* at 37. Finally, the interviewer stated, "You know that no matter what you tell me today, I'll give you a ride home, drop you off, wherever you want to go." *Id.* at 38. Ellis never told Wilson that there was treatment and counseling specifically available for him. He used the term generally and in relation to the victim and to the family. He never stated that he would drive Wilson home and drop him off wherever he wanted to go.

Although *Howard* is distinguishable, it does not necessarily mean the language here failed to include a promise of leniency. Ellis expressed sympathy and mentioned treatment of one kind or another repeatedly. However, to hold that a promise of leniency was extended under the facts of this case would be tantamount to restraining an interviewer from expressing empathy and using the words "therapy," "counseling," or "closure" when questioning a suspect, even though the victim is a family member. Certainly Ellis never specifically offered Wilson therapy, counselling, or another benefit as an alternative to a criminal charge or incarceration. We conclude these words do not necessarily imply a promise of leniency and they did not under the facts of this case. Ellis never expressly said that counseling would even be available to Wilson, except as he may have been included as a part of the family, and there was no suggestion that he would be given a ride home or any other explicit or implicit promise of leniency. We conclude the court correctly denied the motion to suppress and admitted the confession.

**AFFIRMED.**