# IN THE COURT OF APPEALS OF IOWA

No. 22-1428
Filed July 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DAMEN JERMAINE WALTON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erica Crisp (suppression ruling) and Becky Goettsch (trial), Judges.

The defendant challenges the suppression ruling and the weight of the evidence supporting his conviction for operating while intoxicated. **AFFIRMED.**

Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

A jury found Damen Walton guilty of operating while intoxicated (OWI). On appeal from that conviction, Walton challenges the district court's denial of his motion to suppress and contends his motion for new trial should have been granted because the jury's verdict is contrary to the weight of the evidence. Following our review, we conclude the officer had probable cause to initiate the stop and the district court did not abuse its discretion in denying the motion for new trial; we affirm.

**I. Background Facts and Proceedings.**

At approximately 10:15 p.m. on September 1, 2021, Officer Donevan Roe initiated a traffic stop after seeing a vehicle that turned out to be Walton's proceed through an intersection while the traffic light was red. Based on his interaction with and observations of Walton during the stop, Officer Roe believed Walton was under the influence. Officer Roe placed him under arrest and took him into custody. Walton was later charged by trial information with OWI.

Walton moved to suppress "all evidence gathered as a result of the stop." He asserted that he "went through the traffic control device while it was in the 'steady circular yellow' phase" because he "could not make a safe stop." Pointing to Iowa Code section 321.257(2)(b) (2021), which allows for a vehicle to proceed through the intersection during a yellow light "[i]f the stop cannot be made in safety," Walton asserted that he did not break a traffic law so Officer Roe was without probable cause for the stop. The State resisted.

At the suppression hearing that followed, the State introduced evidence from Officer Roe's dashcam. Additionally, Officer Roe testified that he first noticed

Walton's vehicle because it seemed to be traveling at a high rate of speed. Officer Roe turned around and "attempted to catch up to him." As he "accelerated and tried to catch up, [Walton's vehicle] ended up running through a red light." On cross-examination, Officer Roe admitted that he could not estimate the speed at which Walton was traveling but reiterated that he believed it was faster than the posted speed limit of thirty-five miles per hour. Walton also testified, stating it was not safe for him to stop at the light "[b]ecause [he] didn't have enough time to. [He] didn't feel safe."

The district court denied Walton's motion to suppress in a written ruling. The court concluded Officer Roe had probable cause to believe Walton violated section 321.256:

> as the traffic light was clearly yellow prior to [Walton] entering the intersection. Although [Walton] testified that he felt it was unsafe to stop based on his knowledge of his vehicle, there were no vehicles behind him that would *necessarily* have rendered it unsafe to attempt a stop. If [Walton] was exceeding the speed limit, making it too difficult for him to stop, this is not a defense. This is a factual dispute, which might negate proof beyond a reasonable doubt, but that does not negate the officer's probable cause in believing that [Walton] had violated [s]ections 321.256 and 321.257.

Walton's case was tried to a jury in April 2022.[1] Officer Roe testified that when he first encountered Walton, he noticed Walton had bloodshot, watery eyes; slightly slurred speech; an odor of alcoholic beverage on his breath; extremely dilated pupils; and high muscle rigidity. The State introduced and played for the jury a video from Officer Roe's body camera, which showed Officer Roe's first interaction with Walton and captured him telling Walton that he was stopping him

---

[1] Walton's case first went to trial in January 2022 but ended in a mistrial.

for running a red light. Walton responded, "It wasn't red when I crossed though." Officer Roe disagreed, telling him, "It was red before you entered the intersection." When asked if he drank alcohol that night, Walton admitted, "Yeah. Yeah, I did. . . . Some beer and all that." Walton agreed to complete the horizontal-gaze-nystagmus test, and Officer Roe testified he observed four of six clues, which would indicate to him that a person has "a [blood alcohol content (BAC)] of about .08." Walton also completed the walk-and-turn test, displaying five of eight clues, which Officer Roe testified indicated "he would have a BAC above .08." Walton also agreed to complete the final test—the one-leg-stand test—but Officer Roe ended the test "after [Walton] set his foot down three times [because he] was afraid for [Walton's] safety due to his level of impairment." Officer Roe believed Walton was impaired and decided to arrest him. While Walton was generally congenial before the arrest, afterward, he became uncooperative and spent approximately thirty to forty-five minutes yelling,[2] sometimes making derogatory remarks about Officer Roe or his family and other times just shouting nonsense sounds such as, "La la la la la." Walton ultimately refused to submit to a breath sample.

Walton called Michael, who was a passenger in the vehicle when Walton was stopped, to testify in his defense. Michael testified he was with Walton for an hour or two before the stop, though he believed Walton picked him up around 4:00 p.m. He did not remember seeing Walton consume any alcohol

---

[2] This lasted the whole drive to the county jail and throughout the time Officer Roe read Walton the implied consent form and told him about his right to call someone.

during the time they were together. According to Michael, the pair went to a pool hall and then were on their way to Michael's home when the stop took place.

The jury found Walton guilty of OWI.

Walton filed a motion for new trial, asserting the verdict was contrary to the weight of the evidence. *See* Iowa R. Crim. P. 2.24(2)(b)(7). He maintained that the "indicators that led" to his arrest could "be explained by factors other than intoxication" and suggested Michael's testimony established Walton had not consumed alcohol for a six-hour window before the stop.

The court took up the motion before sentencing. Walton relied on his written motion, which the district court denied, stating "I do not think that the verdict is contrary to the evidence. I think the evidence supported the jury's verdict in this situation." Walton was sentenced to a one-year term of incarceration with all but three days suspended.

Walton appeals.

**II. Discussion.**

**A. Motion to Suppress.**

Walton challenges the district court's denial of his motion to suppress. Our review is de novo. *See State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019). And when we review "the district court's ruling on [Walton's] motion to suppress, we consider both the evidence presented during the suppression hearing and that introduced at trial." *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998).

When a police officer witnesses a traffic violation actually occur, the State has established probable cause for a stop. *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). Here, Walton maintains there was no traffic violation because he

entered the intersection when the traffic light was still yellow and, since he was unable to stop safely, he proceeded through the intersection—as is allowed by section 321.257(2)(b).[3]

We cannot say the traffic light was still yellow when Walton entered the intersection. The view from Officer Roe's dashcam does not clearly show at what point Walton first entered the intersection. At the suppression hearing, Officer Roe testified that as he tried to catch up with Walton's vehicle, "it ended up running through a red light." And in the video from Officer Roe's body camera when he first made contact with Walton, Officer Roe explained that he made the stop because Walton ran the red light. When Walton disagreed, Officer Roe countered with "it was red before you entered the intersection." Plus, even if Officer Roe was personally wrong about the phase of the light when Walton entered the intersection, "[a] reasonable mistake of fact does not negate justification for a stop based on probable cause." *Tyler*, 830 N.W.2d at 292.

Additionally, Walton seems to believe that because he took the stand at the suppression hearing and asserted it was not safe for him to stop his vehicle, that testimony must be accepted as true. But whether to believe his testimony is a credibility question. *See Dempsey v. State*, 860 N.W.2d 860, 871 (Iowa 2015) (placing little value on the defendant's "subjective, self-serving testimony" when "there [was] no other evidence in the record" to support it). And the district court

---

[3] Iowa Code section 321.257(2)(b) states in relevant part:

> A "steady circular yellow" or "steady yellow arrow" light means vehicular traffic is warned that the related green movement is being terminated and vehicular traffic shall no longer proceed into the intersection and shall stop. If the stop cannot be made in safety, a vehicle may be driven cautiously through the intersection.

seemed to conclude Walton's testimony was not credible, noting that while he claimed it was not safe for him to stop, "there were no vehicles behind him that would *necessarily* have rendered it unsafe to attempt a stop." *See State v. Mohr*, No. 19-0070, 2020 WL 564907, at *2 (Iowa Ct. App. Feb. 5, 2020) (reviewing a ruling on a motion to suppress and stating, "While our review is de novo, we defer to credibility findings by the district court").

Upon our independent review of the entire record, we conclude that because either Walton ran the red light or Officer Roe made a reasonable mistake of fact in concluding the light was red when Walton entered the intersection, Officer Roe had probable cause to stop Walton's vehicle. *See* Iowa Code §§ 321.256, .257(2)(a). And because the stop was supported by probable cause, we affirm the district court's denial of Walton's motion to suppress.

**B. Motion for New Trial.**

Walton contends the district court should have granted his motion for new trial because the greater weight of the credible evidence did not support a determination he was under the influence of alcohol, drugs, or both. In support of his claim, he maintains that Officer Roe did not observe him driving in a manner that was consistent with intoxication and points to Michael's testimony that Walton did not consume alcohol during the one to two hours they were together before the stop.

When a defendant moves for new trial based on the weight of the evidence, the "test is more searching than the sufficiency-of-the-evidence test, involves questions of credibility, and requires the district court to determine whether more

credible evidence supports one side or the other." *State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017). We review for an abuse of discretion. *Id.* at 71.

Here, the district court failed to explicitly recite any reasons for the court's conclusion that the verdict was not contrary to the evidence or make any credibility findings on the record. *See State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008) ("When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling."). Nonetheless, "[w]hen the trial court has failed to do so, we may review the record to determine if there is a proper basis for the trial court's ruling." *State v. Moore*, No. 16-1616, 2017 WL 4317298, at *3 (Iowa Ct. App. Sept. 27, 2017) (citing *Maxwell*, 743 N.W.2d at 192–93).

Even if we accept Walton's contention that his driving did not exhibit any signs he was under the influence, the evidence collected once Officer Roe made contact with him weighs in favor of the jury's finding he was under the influence. Walton admitted to Officer Roe—on video, which was played for the jury—that he consumed "[s]ome beer and all that" about two hours before the stop. According to Officer Roe, he could smell alcoholic beverage on Walton's breath as he interacted with him. Additionally, he noticed bloodshot, watery eyes; slightly slurred speech; extremely dilated pupils; and high muscle rigidity. Based on his training, Officer Roe opined that each was a sign an individual had consumed alcohol or other controlled substances. Officer Roe also testified that he observed four of six clues while Walton completed the horizontal-gaze-nystagmus test and five of eight clues on the walk-and-turn test. Officer Roe stopped Walton from trying to complete the one-leg-stand test after Walton put his foot down three times due to Officer Roe's concern he would fall and hurt himself. Based on these

results, Officer Roe testified that Walton likely had a BAC above .08.  Plus, the factfinder can properly rely on Walton's refusal to submit to chemical testing when determining whether he was under the influence.  *See* Iowa Code § 321J.16; *see generally State v. Kilby*, 961 N.W.2d 374 (Iowa 2021).  While it is possible there are explanations other than intoxication for some of these facts, the district court did not abuse its discretion in determining the greater weight of the credible evidence supports the jury's verdict.  *See State v. Wickes*, 910 N.W.2d 554, 570 (Iowa 2018) ("[A] district court should only grant a motion for new trial 'in the extraordinary case in which the evidence preponderates heavily against the verdict rendered.'" (citation omitted)).  We affirm the denial of Walton's motion for new trial.

### III. Conclusion.

Because there was probable cause to support the stop of Walton's vehicle and the district court did not abuse its discretion in denying the motion for new trial, we affirm.

**AFFIRMED.**